ROBINSON v. CHAPLINE.

| 9 | 91 |
|----|----|
| 95 | 575 |

1. PROPERTY IN THE HANDS OF TRUSTEE. Property placed in the hands of a trustee, bailee or agent, without any wrongful or fraudulent intent, cannot be subjected to the satisfaction of the debts of such trustee, bailee or agent.
2. SAME: FRAUD. To enable third persons to take and hold such property, either as creditors or vendors of the trustee, bailee or agent having the custody of the same, some fraud or *mala fides* must appear on the part of the owner.
3. INSTRUCTIONS. Instructions should not assume a state of facts as established, or as likely to be found by the jury.
4. LEVY BY THE SHERIFF. The sheriff is not restrained by law from levying upon property, about the title of which there is doubt, while there is any in the possession of the defendant free from question.
5. RATIFICATION. The consent of the principal to acts of the agent in violation of his instructions, will not be inferred until circumstances are shown as a foundation for such inference.
6. *Bailey v. Harris*, 8 Iowa 331, cited and approved.

*Appeal from Dubuque District Court.*

THURSDAY, JUNE 16.

This was an action of trover, by which the plaintiff seeks to recover of the defendant, the value of certain goods taken by him, as deputy sheriff of Dubuque county, by virtue of a writ of attachment issued in an action by one Osmond Bailey against W. D. Gatchell, and taken as the goods of Gatchell.

Robinson and Gatchell, on the 11th of April, 1855, entered into an agreement of the following substance: Robinson was to furnish Gatchell with from two to three thousand dollars worth of ready made clothing, &c., (the amount to be governed by the success of the concern,) for the purpose of going into business in the city of Dubuque, Iowa. The store to be in the name of Gatchell, but the goods furnished by Robinson to remain his property as fully and completely as though this contract had not been made. The goods to be

furnished at five per cent above the marked cost in Cleveland, Ohio, where the plaintiff resided, and from whence he was to furnish them. Gatchell to go to Dubuque, and devote himself to the prosecution of the business, and to open and conduct it in his own name, but the goods to remain Robinson's. Every two weeks Gatchell was to render an account of the business; its sales, cost, expenses and profits. After taking out fifty dollars each month, for himself and for expenses, he was to remit the balance of money received, to Robinson, as often as he should have five hundred dollars on hand. Gatchell binds himself not to purchase from any concern, nor to have on hand goods for sale, except such as may be furnished by Robinson, and sell only for cash down, giving credit to no one. If G. should fail to render his accounts as above stated, or to sell for cash only, or if Robinson at any time should conclude the concern was not paying a fair profit, he might close the store and take possession of all the goods remaining. If not so closed, it was to continue for three years from date, and Gatchell was to receive for his compensation, all the profits, after paying Robinson for the goods, and the expenses of the store; provided that, until the three years expire, Gatchell should take out, in the shape of profits, only fifty dollars per month, leaving all the balance in the store. At the end of that time Gatchell should purchase the stock on hand, paying five per cent above the marked cost. If closed before the three years, by default of Gatchell, or by Robinson as above provided, Gatchell to receive pay for what may be due him from the profits, by taking goods on hand at the prices above, and not in cash; and if the profits fail to pay expenses, Gatchell to bear all losses and to pay all expenses, as rent, fuel, clerk hire, taxes, &c., and Robinson for the goods as aforesaid, and the balance of profits to be his.

The plaintiff introduced Gatchell as a witness, whose testimony on certain points is here noted. It appearing from his testimony, that a written agreement existed between him and Robinson, he was required to produce this, (which is the

matter stated above,) and, in answer to interrogatories, stated that Hill & Cook were garnished in the suit of Bailey against him, and that they were indebted to him in the sum of seventy-six dollars; that there had been no settlement between him and Robinson, but that there were no profits; that when the attachment of Bailey against himself was levied, he was packing up the goods, and held them subject to the order of Robinson; that he did the business, and put out cards and hand bills in his own name, and purchased the goods of Bailey in his own name, but stated to Bailey that they were on his own account; that he notified Robinson that he had purchased goods of Bailey, to put in the store; that when Chapline, the deputy sheriff, was attaching the goods, he (the witness) showed him from $150 to $175 worth of goods which belonged to him; that they were separate from those of Robinson, and he notified the officer that the clothing belonged to Robinson, and that the other goods, hats, caps, &c., belonged to *him;* that Chapline then attached the goods belonging to Gatchell, and went for a box to put them in, but when he returned, he said that Bailey told him not to take hats and caps, but to take clothing.

It is agreed that the attachment of Bailey was for $138,78. Udell, the clerk of Bailey, testified, on the part of defendant, that Gatchell bought the goods of Bailey, saying they were for his store; that they were bought on credit; and that no representations were made that the stock in the store belonged to any one but himself. One Petibone, on the part of plaintiff, testified that Gatchell notified Chapline that the clothing did not belong to him, but that the hats and caps did belong to him.

1. The court instructed the jury, "that when clothing is in the possession of Gatchell, a retail clothier, to be sold for the benefit of himself and the owner, Gatchell acting as though it was his own, and there is no notice whatever of the rights of Robinson, and Gatchell buys stock for the benefit of the concern, on the strength of his being the owner of the clothing, the clothing is liable for the debt accruing by

reason of the purchase;" to which the plaintiff excepted.

2. The plaintiff requested the court to instruct, "that if the jury found that Gatchell did not buy the goods of Bailey for the concern, but bought them for himself, and if they found that notice was given to the sheriff, before attachment, that the other goods belonged to Robinson, then the goods of Robinson would not be liable for the debt of Bailey," which the court refused, but gave the following:

3. "That if the jury found that plaintiff suffered Gatchell to buy goods in his own name, for the benefit of the concern, without special notice to Bailey at the time of sale, then the goods were liable for the debt; and that notice, after the sale to Gatchell that the goods belonged to Robinson, would not be sufficient."

4. The plaintiff further requested the following instruction: "that the sheriff should have taken the goods pointed out to him by Gatchell as his own, and not those which Gatchell informed him belonged to Robinson," which the court refused. To the giving and refusal of each of them, the plaintiff excepted.

The verdict and judgment were rendered in favor of the defendant, and the plaintiff appeals, and assigns the above as error.

*Waldron & Jennings*, for the appellant.

*Bissell, Mills & Shiras*, for the appellee.

WOODWARD, J.[1]—It seems to this court, that these goods are to be made liable to this attachment, only upon one of two grounds. One is, upon the supposition that there was a partnership between Robinson and Gatchell, and under the name of the latter, and that the goods were bought of Bailey by this firm. And the other is, the direct one, that the goods were the property of Gatchell. It is not intimated

---

1 WRIGHT, C. J. dissenting.

that there was a partnership. That the goods were Gatchell's, is set up by the defendant in his formal pleadings, but it is not upon this ground that he seeks to hold them. The evidence affords no grounds for it, and neither the argument of counsel, nor the instructions of the court, put the case upon that ground. The defendant claims to hold the goods, because the plaintiff has so placed them in the hands of Gatchell as to give him credit, and enable him to practice a fraud on others.

It is to be observed that there is nothing fraudulent in the contract between Robinson and Gatchell—nothing deceptive —nothing unfair. It is not true that whenever one entrusts property in the hands of another, such property is subject to the debts of the trustee. Every one who does so entrust property, with authority to keep, use, or deal with it, *in some sense* gives the trustee a credit; but yet, if their contract and intent be honest and *bona fide*, it is not to be subjected as the property of the bailee or trustee. And this doctrine is acted on every day. The opposite one, or that upon which the defendant stands, would destroy the relation of principal and agent, and a bailment could not exist with safety to a bailor. The simply putting one into a position where he *can* do a wrong, is not sufficient to charge the other, but there must be some wrong intent—some *mala fides*, or that which is regarded as its equivalent.

The instruction marked 3, given by the court instead of that marked 2, and asked by the defendant, commences, "if the jury find that plaintiff suffered Gatchell to buy goods in his own name, for the benefit of the concern, without special notice to Bailey," &c. This supposes a possible state of case, which there was no evidence to countenance. On the contrary, by the express terms of the contract, he is prohibited purchasing from any other houses, and he binds himself not to purchase from any concern, nor to have on hand goods for sale, except such as may be furnished by Robinson. This instruction would naturally have a tendency to mislead the jury, by implying that they *might* find such a state of

the case, whilst in truth it was prohibited. And so, too, we perceive that, if the possession of the goods tended to give a credit, the exercise of that credit was expressly provided against and forbidden. Now, it would seem that no one can be safe with his property in the hands of a bailee, agent or clerk, if he is chargeable, when in a position so free from the elements of fraud as this plaintiff.

The cases referred to by the defendant, are quite different from this in this essential point. There is some element of fraud in them. They are cases of sales, or mortgages; or possession is held, when, by the rules of law, it should pass. Such are the cases of *Allen* v. *Wheeler*, 4 Grey, 127; *Kirtland* v. *Snow*, 20 Conn. 28; *Hutchins* v. *Gilchrist*, 23 Ver. 82. In the present case, there is no sale, no mortgage, no transfer of property, but·one is acting as the agent or clerk of the other, in selling; his authority is restricted, and he is forbidden to obtain credit, and even to purchase of others.

The case of *Bailey* v. *Harris*, 8 Iowa 331, stands upon the same principle, and gives countenance to these views. There Bailey sold Kingsley a set of blacksmith's tools, under an agreement that, if he paid for them as stipulated, they· should be his, but till then they should remain the property of Bailey. A creditor of Kingsley levied on them, and Bailey replevied them. The property was held to be in Bailey, and his action was sustained. To enable third persons to take and hold the property in such cases, there must be some fraud or *mala fides*, at least, or otherwise much of the honest intercourse between men, is cut off.

This court is not in the least disposed to hold a doctrine which shall cover frauds, or any species of imposition, but those who are actually honest, and have not in fact done anything to mislead others, are entitled to protection. It is apprehended that the cases where the property of one has been subjected to the debts of another, are cases of sales or mortgages, or the like, with some circumstance of fraud, or where confidence has been invited and betrayed. And this confidence was not invited in the present case, but, on the

contrary, was prohibited.   And if it be said that third persons could not know the actual agreement between the parties, the answer is, that Robinson is to be judged by that which he has in reality done, as is done in other relations. For instance, in the relation of principal and agent, the actual authority given to the agent, is often looked to in cases where he has misled third persons, and the principal is held to that extent only to which he has conferred authority. The plaintiff having done all fairly and honestly, and having actually prohibited the act by which the third person is deceived, we are unable to perceive that either law or reason requires that he should be charged.

With these remarks we recur to the particular points made in the case.   The first instruction is liable to the objection, that it *assumes* a state of the case.   It states what the court understood to be the facts proved, some of which are controverted, and announces the legal consequence following them. The taking the case itself as an illustration to the jury, is an objectionable mode of instruction.   But the principal objection to it is, that it proceeds upon the basis of legal principles opposed to those which should govern the case, as we have explained them above.

The third instruction, given instead of that marked two, and asked by the plaintiff, has been noticed before.   It assumes as a fact likely to be found by the jury, one which the evidence not only does not in any degree support, but of which the contrary is expressly shown.   And both of these, (which are all that are given,) omit entirely, to bring into view, or give any effect to, the actual contract between the plaintiff and Gatchell.   Finally, the leading objection to them lies in their proceeding upon what we conceive to be an erroneous assumption of the law applicable to the case.

Under the second instruction requested by the plaintiff, (numbered four,) he urges that there was sufficient property, about the title to which there was no doubt, and that it was the duty of the officer to levy on that; and also that he did, in fact, make seizure of that property.   It does not appear

that the sheriff had completed such a levy, and therefore there is not sufficient to make this a question. And to make the fact of any avail, that there was other property, it would be necessary for this court to hold, that the officer could not take property about which there was a doubt, whilst there was any free from question; but we are not prepared to hold this to be the law. When the sheriff has doubts, he is authorized to require security, before he assumes the responsibility, or he *may* resort to that which is free from question, but the law has gone no farther in its command.

As to the testimony that Gatchell informed Robinson of the purchase made by him, it is to be noticed, that the goods had been already purchased when this notice was given; and there is no evidence of any answer from Robinson, and we cannot infer his assent, against the express terms of the agreement, until some circumstances are shown as a foundation for it.

The judgment of the District Court is reversed, and the cause is remanded.

WRIGHT, C. J., *dissenting.*—For the reasons briefly stated in *Bailey* v. *Harris*, 8 Iowa 331, I *dissent* from the foregoing opinion.