R. A. HAMBLET ET AL. v. ELIZABETH STEEN.

TRANSACTING BUSINESS. *Liability for debts of agent or manager. Section 1300, Code of 1880, applied. Case in judgment.*

R., the wife of T., owned the personal property used in carrying on a general livery stable business; the lease of the building was in her name; the license to carry on such business was taken out in her name, and was posted in the office of the stable; the books were kept and accounts made out in her name. T., the husband, conducted the business, and was usually at the stable superintending and managing it, and was shown to have given two orders for the payment of dues to the stable proprietor, signing his own name thereto. There was an advertisement, in the village paper, of the stable as "Carr's Stable," managed by T. The only sign at the stable was "Carr's Stable." T. spoke of the business and property as his, and apparently acted as proprietor. Some persons were aware that the wife owned the property; while others were led to con-

clude, from what they saw, that the husband was the owner. *Held,* that in such circumstances the property became liable for the debts of T., under Section 1300, Code of 1880, which provides that "if any person shall transact business in his own name, all the property used or acquired in such business" shall be liable for his debts. ARNOLD, C. J., dissented.

APPEAL from the Chancery Court of Yalobusha County.

HON. B. T. KIMBROUGH, Chancellor.

On February 1, 1887, an execution was issued from the Chancery Court of Yalobusha county in favor of Mrs. E. Steen against T. H. Hamblet, and the same was levied on certain horses, mules, buggies, harness and other personal property, used in carrying on a general "livery" stable business. Mrs. R. A. Hamblet, wife of T. H. Hamblet, interposed ¿a claim to the property in the manner provided by law. On the trial of the claimant's issue, the Chancellor decided that the property was liable to the execution by virtue of Section 1300, Code of 1880, and rendered a decree in favor of the plaintiff in execution. The claimant and the sureties on her forthcoming bond appealed. The proof in the case is sufficiently stated in the opinion of the court.

*A. H. Whitfield,* for the appellants.

I submit:

1. That this, a mere livery stable business for hire, is not within the "business" meant in § 1300, Code of 1880.

2. That if it is, the over-whelming weight of the evidence here is that Mrs. Hamblett conducted the business in her own name, as the advertisement is itself conclusive evidence that Hamblett did not transact it in *his* name, for the advertisement says he did it as agent; and

3. That the advertisement is not a "sign" within §,1300. I ask that the decree be reversed, and that judgment be rendered here for the appellant.

*Blount & Golladay,* for the appellee.

1. It is clear, from the evidence, that T. H. Hamblet transacted a "livery, sale and feed business," the business for which a privilege license was issued to Mrs. R. A. Hamblet. That he did a general livery business all the witnesses prove; that he sold and traded in stock is not denied by him.

*Shannon* v. *Blum & Co.*, 60 Miss., 828.

2. Whether T. H. Hamblet's creditors dealt with him " with or without notice of the fact that he was but an agent of another," etc., the property under this statute, § 1300, is subject to their demands.

*Gumbel* v. *Koon*, 59 Miss., 266; *Quin* v. *Myles*, Id., 377–8.

" Where a sign is employed, it must not mislead ; and where " there is no sign he who appears to be owner from transacting " business with it [the property] or acquiring it in his business, " is to be so held and treated in favor of his creditors."

*Paine* v. *Hall, S. & L. Co.*, 64 Miss., 180.

The witnesses for the appellee establish that the transactions they had with the stable were with T. H. Hamblett, and they received the impression that he was the owner. On some he gave orders, and to some issued receipts in his own name.

Some of the esoteric witnesses of appellant had been informed that Mrs. R. A. Hamblett owned the business.

3. We invoke also the presumption in favor of the correctness of the decree.

*Partee* v. *Bedford*, 51 Miss., 90.


CAMPBELL, J., delivered the opinion of the Court.

This case involves the consideration of § 1300 of the Code as applicable to a case different from any we have heretofore decided.

In *Schoolfield* v. *Wilkings*, 60 Miss., 238, it was admitted that " Mrs. W. was doing business as a merchant with her own means and in her own name," and her husband was her agent and clerk, and it was held that in this state of case a sign was not required.

In *Cato* v. *Hardie*, No. 4797, not reported, the facts are that Cato went to St. Louis and purchased a car-load of mules and shipped them in his own name to Hazlehurst, where they were put in a livery stable and exhibited and offered for sale by him, and on the next day after their arrival they were seized under execution against Cato. The wife of Cato and Hardie claimed the mules, but they were decided to be liable to execution as the property of Cato, by virtue of § 1300. The case now

before us is distinguished from all that have preceded it by the fact that the business was transacted partly in the name of Mrs. Hamblet, who owned the property. The lease of the stable building was in her name, and the bill of sale of personal property was, and she obtained licenses, and books were kept in her name, and accounts were made out against customers in her name. Mr. Hamblet conducted the business, and was usually at the stable, personally superintending it and managing it, and he is shown to have given two orders for the payment of dues to the stable proprietor, and signed his name to them. There was an advertisement in the village newspaper of the stable as " CARR STABLE," managed by Mr. Hamblet. The only sign at the building was " CARR STABLE." The license was posted up in the office of the stable. Hamblett spoke of the business and property as his, and acted as proprietor to all appearances. A number of persons were aware of the fact that the stable and property belonged to Mrs. Hamblet. Some were led to conclude from what they saw that Mr. Hamblet was proprietor.

It is thus seen that while the " esoteric" circumstances of the business were in the name of Mrs. Hamblet, the exoteric pointed to Mr. H., as owner, and the question is, does § 1300 subject the property to liability for the debts of Mr. Hamblet?

The object of § 1300 is to prevent fraud. The means it adopts to accomplish that is to require the conspicuous display at the place of business of a sign which shall plainly disclose the name of the true owner, otherwise the property used or acquired in the business shall be liable to the creditors of him who appears to the world to be the owner, by dealing with it as owners usually do. This law has regard to the external *indicia* of ownership, and *by these* stamps ownership on the property, to the extent of liability to the creditors of him who appears to be owner. A sign which shall proclaim the real owner is required where one owns and another conducts the business; so that the public may be informed how matters are. In this case there was no sign except the old one, as stated above. The advertisement in the newspaper was a mere circumstance in the conduct of the business, but it proclaimed that the business was managed (transacted) by Mr. Hamblet. The license posted in

the office was not such a sign as the law requires. The external and visible acts connected with the transaction of the business were performed by Mr. H., and pointed to him as owner. It would have been easy to save the rights of Mrs. H. Only a plain sign placed conspicuously at the stable disclosing that she was principal was necessary. In the absence of that the question is, who transacted the business?

It will not do to say that Hamblett was not transacting business in his own name, and therefore the case is not within the statute. The words of the statute, " or, if any person shall transact business in his own name, without any such addition, " etc., do not have the effect to permit one to do business in a fictitious name or in that of some one not the owner of the property, and thus escape its consequences. That is the very evil which it was made to extirpate. The words " in his own name without any such addition " are designed to meet the case of one who transacts business without any such addition as is mentioned for illustration, and not in the name of some person other than himself, who is the real owner. Whoever transacts business without doing it in the name of another does it in his own name and character, necessarily. The statute does not mean that it shall be defeated by the easy disguise of a fictitious name, or a real name of one not the owner, or evaded by the artful dodge of not using any name at all. It proceeds on the assumption that, if one transacts business without doing it in the name of another, he does it in his own name, and it applies wherever one transacts business, not in the name of another, who is the true owner of the property employed. The chanceller found that Mr. Hamblett transacted the business in the meaning of the statute, and we concur in that view.       *Affirmed.*

ARNOLD, C. J., dissenting.

I do not concur in the opinion of the majority of the court. I vote to reverse the judgment of the court below. On the facts of record the judgment should be for appellant.

If it be conceded that the business, as it was carried on, was within the meaning of the statute, the question for decision then is, was the business transacted in the name of Mrs. Hamblett

or of her husband? It was certainly transacted in the name of one or the other, or both, and not in a fictitious name. I am unable to deduce from the evidence that it was transacted by the husband, *in his own name*. It seems to me that the most important parts of it were transacted publicly, in the name of the wife, and that the husband was no more than a common clerk or employee in the matter. A statute which produces forfeiture of estate, or which is so harsh and penal in its consequences as to arbitrarily condemn the property of one person to pay the debts of another, when no fraud or wrong is suggested, intended or accomplished as to others, by the use which is being made of the property by its owner, ought not, in my judgment, to be applied in a doubtful case. It should be construed strictly, and its application limited to cases that are brought fully and clearly, in every respect, within its letter.