## CHARLESTON.

CABLE COMPANY *v.* MATHERS *et al.*

Submitted June 12, 1912.   Decided October 14, 1913.

1. EXCEPTIONS, BILL OF—*Sufficiency—Stenographer's Transcript.*
   A skeleton bill of exceptions, incorporating into it the stenographer's transcript of the testimony by any description or designation thereof that makes its identification reasonably certain, is sufficient.   (p. 808).

2. JUSTICES OF THE PEACE—*Depositions—Right to Use on Appeal.*
   Depositions regularly taken and read as evidence on the trial before a justice of the peace, may be read in the circuit court on appeal.   (p. 809).

3. DEPOSITIONS—*Objections—Time for Making.*
   It is too late, after trial begins, to object to the reading of depositions on any ground that can be cured by a retaking.   (p. 809).

4. PRINCIPAL AND AGENT—*Liability of Principal—"Trader."*
   To constitute one a trader, within the meaning of Sec. 13, Ch. 100, Code (1906), he must be both a buyer and a seller, or a barterer of goods, for profit.   (p. 810).

5. SAME.
   One to whom pianos and organs are consigned by the owner, to be sold on a commission, who buys and carries no goods for sale on his own account, is not a trader within the meaning of said section.   (p. 810).

6. SAME—*Consignment of Goods—Liability for Debts—"Barterer."*
   That such consignee occasionally accepted old musical instruments in part payment for new ones, does not constitute him a barterer within the meaning of said section.   (p. 811).

7. SAME—*Principals—Goods—Liability for Agent's Debts.*
   Property of another in the hands of an agent who is not himself a trader, for sale on a commission, is not liable for the agent's debts.   (p. 811).

Error to Circuit Court, Wood County.

Action by the Cable Company against J. W. Mathers and others.   Judgment for defendant and plaintiff brings error.

*Reversed and Remanded.*

*E. L. Coleman,* for plaintiff in error.

*F. H. McGregor* and *Kreps & Russell,* for defendant in error.

72 W. Va.

WILLIAMS, JUDGE :

This writ of error is to a judgment of the circuit court of Wood county rendered, on appeal from a justice, in favor of a number of attaching creditors of A. L. Barker, and against the Cable Company, a corporation, claimant of the property attached. After the suits were brought and attachments levied upon certain organs and pianos in a building in the city of Parkersburg, formerly occupied by said Barker, the Cable Company appeared before another justice and claimed the attached property. The justice decided the question in favor of the Cable Company, and directed the constable to turn the property over to it. Defendants appealed the cases to the circuit court, and, the issue in each case being the same, the parties agreed to submit all of them to the jury to be tried together, which was done. But before passing to a discussion of the merits of the case, it is necessary to determine a preliminary question raised in brief of counsel for defendant in error, which is, whether bill of exceptions No. 1 sufficiently identifies the evidence to make it a part of the record. It is what is commonly called a skeleton bill, and was signed by the judge in vacation, within thirty days after the adjournment of the term, and was made a part of the record by a vacation order. It certifies, in part, as follows, viz: "All the proceedings on said trial, and all the evidence considered by the court were reduced to writing and are embodied in the transcript made by John T. Harris, official stenographer of the court, and referred to therein, and styled 'Transcript of Testimony,' and filed in these causes and all the said rulings and decisions of the court, and all of the exceptions taken and contained in said transcript of testimony, are made part of the record and this bill of exceptions, with the same effect and intent as though the same were fully and at large herein copied as a part of this bill of exceptions No. 1." The words *transcript of testimony,* by which the transcript of evidence is identified, do not appear at the beginning of the evidence; but instead of those words are the words "Testimony on behalf of the plaintiff." Then following this heading, and between it and the certificate of the official stenographer, is found the testimony of witnesses, which appears to have been taken

the case. We do not think the omission of the words *tran-script of testimony* is fatal, because the stenographer's transcript is sufficiently identified by its character and by reference in the ill of exceptions to the stenographer's certificate appended to the transcript. From the character of the evidence we see that it applies to this case; and the judge's certificate designates it as having been reduced to writing by John T. Harris, official stenographer of the court. We find, at the end of the transcript, a certificate signed by John T. Harris, as official stenographer, styling this case and certifying that the evidence was taken in the trial of it. We are morally certain that the transcript is the same mentioned in the judge's certificate, or skeleton bill of exceptions; and, therefore, hold that it is properly a part of the record. *Marshall v. Stalnaker,* 70 W. Va. 394, and *Darnell v. Wilmoth,* 69 W. Va. 704.

It is also urged that certain other papers appearing in the record, following the certificate of the official stenographer, are not parts of the record. They are what purport to be copies from the docket of the justice who tried the attachment suits, out of which the present suit respecting the ownership of the attached property and its liability for A. L. Barker's debts, grew. The justice testified as a witness in this case, and identified these papers; it appears that they were offered, as parts of the record, in the trial of this case in the circuit court. The marks these papers bear, as "J. H. R. Nos. 1, 2, 3, 4," etc., correspond with the designation the witness gave to them in his testimony. This, we think, is quite sufficient to identify them as copies of the same papers admitted at the trial. It was not necessary to read them to the jury, because they were official papers and did not present a question to be determined by the jury.

The court permitted certain depositions that had been taken and read before the justice of the peace, to be read as evidence on the appeal, over objection of defendant, and this is cross-assigned as error. These depositions are identified by E. L. Coleman in his testimony, as the same that were read at the trial of the case before the justice. Therefore, assuming that they were duly taken and properly certified, they were admissible as evidence on the appeal. Sec. 168, Ch. 50, Code, requires

the justice within twenty days to transmit the depositions, together with a transcript of his docket, to the clerk of the circuit court.  For what purpose are the depositions to be transmitted, if not to be used as evidence in the trial in the circuit court?  If they were objected to on some ground that could be cured by a retaking, it was then too late to object.  Objection on such grounds must be made before trial begins.  *Supply and Contracting Co.* v. *Consolidated Light and Ry. Co.,* 42 W. Va. 583.

There is no proof that A. L. Barker was ever at any time the owner of the property in question, and the proof is conclusive that it was owned by the Cable Company.  But defendants' counsel contend that said Barker was a *trader,* and dealt with the property as his own in such manner as to make it liable for his debts.  The case turns altogether upon the question, whether Barker was a trader within the meaning of that term as used in Section 13, Chapter 100, Code (1906).  The property had been consigned to him by plaintiff, for sale on a commission. He rented a store room in Parkersburg, and put up his sign over the door which read, "A. L. Barker, Pianos and Organs." No other sign was displayed in or about the building, and there was nothing to inform the public that he was not sole owner of the property which he was advertising to sell.  There is no proof that he carried any other stock for sale than the pianos and organs consigned to him by plaintiff.  The contract between him and plaintiff provided that the pianos and organs were to be held on consignment until sold, and such sale approved and accepted by the plaintiff.  He was also to keep the property insured for the benefit of plaintiff, and to guarantee all notes taken in payment of goods sold.  The contract was not recorded in Wood county.  Barker appears to have become a resident of Ohio at the time the attachments were levied.  It is proven that he, two or three times, took old organs in part payment for new ones; that, on two occasions, he received horses in part payment for pianos or organs; and that sometimes he received checks payable to his own order for them.  But it does not appear what disposition he made of the property taken in exchange, or that he was engaged in the business of bartering.  His chief business, and the only business which he advertised was apparently selling

pianos and organs; neither was he a licensed auctioneer or commission merchant. So far as it appears from the record, he bought no goods for sale, and sold no other goods than the pianos and organs received by him for sale, from plaintiff. In view of these facts, he was not a trader within the meaning of section 13, chapter 100, Code, which reads as follows: "If any person shall transact business as a trader, with the addition of the words 'factor,' 'agent,' 'and company,' or 'and co.,' and fail to disclose the name of his principal or partner by a sign in letters, easy to read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the town or county wherein the same is transacted, or if any person transact such business in his own name, without any such addition, all the property, stock, choses in action, acquired or used in such business, shall, as to the creditors of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant." The statute is designed to make the property of another, in the hands of a trader, liable for his debts, when such trader fails to comply with certain requirements, none of which appear to have been observed by Barker in this case. The statute is, therefore, in derogation of the common law rights of property, and should receive a strict construction. If Barker was not a trader, within the strict definition of that term, the property of the Cable Company, which was consigned to him only for sale, is not liable for his debts. But if he was a trader then it is liable. Webster defines trader as, "One who engages in trade or commerce; one who makes a business of buying and selling or of barter; a merchant." The Century Dictionary defines the word thus: "One who is engaged in trade or commerce; one whose business is buying and selling, or barter; one whose vocation is to buy and sell again personal property for gain." There is no proof that Barker bought, he only sold personal property. To constitute him a trader, in the sense in which that term is used in the statute, it was essential that he should have been both a buyer and a seller for profit. That

72 W. Va.

he sometimes received other property in part payment for pianos or organs sold by him, is not sufficient to make his case an exception to the rule. He was not in the business of bartering.

The facts in this case are very similar to the facts in *Brown Manufacturing Co.* v. *Deering,* 35 W. Va. 255, in which it was held that, "A party whose entire business consists in selling agricultural implements, wagons, etc., as agent for the manufacturer thereof, receiving a commission for his services in disposing of the same, can not be regarded as a trader or commission merchant."

The term trader has been similarly construed in the following cases, viz: *In re New York &c. Co.,* U. S. 98 Fed. 711; *In re Tontine Surety Co.,* 116 Fed. 401.

A. L. Barker not being a trader within the meaning of section 13, chapter 100, Code, it follows that the court erred in refusing to give plaintiff's instructions Nos. 2, 6, 7 and 8; and also erred in refusing to set aside the verdict and grant plaintiff a new trial.

The judgment is reversed, the verdict of the jury set aside and the case remanded for a new trial.

*Reversed and Remanded.*