# CHARLESTON.

General Electric Company v. C. H. Martin, Constable
et als.

(No. 5237)

Submitted April 28, 1925.   Decided May 26, 1925.

1. Sales—*Contract of Agency, That Principal Furnishing Goods to Agent Shall Remain Owner Until Sold to Bona Fide Purchaser, is Not Conditional Sale Requiring Recordation.*

   If a contract of agency is entered into, and the principal agrees in effect to furnish the agent on consignment certain articles of its own manufacture, to be sold at a stipulated price, and paid for when sold, such articles, when so furnished, remain the property of the principal until sold to a bona fide purchaser. Such contract is not a conditional sale, requiring recordation under chap. 74, sec. 3, or chap. 99-A, sec. 5, Code.   (p. 521).

2. Principal and Agent—*Goods Consigned to Corporation Engaged in Merchandise Business as Trader, and Mingled With Its Stock, Held Liable to Creditors of Corporation For Its Debts.*

   Code, chap. 100, sec. 13, provides that, if any person transact business as a trader in his own name, and fails to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published as provided by this statute, then all the property, stock, and choses in action acquired or used in such business shall, as to creditors of such person, be liable for his debts. Held: That a corporation engaged in the "business of general merchant in electric equipment both wholesale and retail", in its corporate name, is a trader within the meaning of said statute, and if said business is so transacted by said trader without conforming to the requirements of the statute, goods consigned to it for sale and commingled with its stock shall, as to the creditors of such trader, be liable for its debts. (p. 524).

3. Landlord and Tenant—*Landlord Cannot Distrain for Rent Goods Consigned to Lessee Engaged in Trade, and Property of Owner Until Sold to Bona Fide Purchaser.*

   To subject such goods consigned to his lessee, as a trader, as aforesaid, for rent, the landlord may not distrain, but will be left to assert his debt as other creditors of such agent. (p. 524).

99 W. Va.

Error to Circuit Court, Kanawha County.

Action by the Western Electric Company against C. H. Martin, Constable, and others, in which, on interpleader, the Western Electric Company was made plaintiff, and Max Frankenberger, and another were made defendants, and later, by agreement, the General Electric Company was substituted as party plaintiff. From a finding for defendant, the General Electric Company brings error.

*Reversed.*

*Brown, Jackson & Knight, Benjamin B. Brown,* and *Herman L. Bennett,* for plaintiff in error.

*John Wehrle, J. E. Chilton,* and *John V. Brennan,* for defendants in error.

WOODS, JUDGE:

On the 21st day of May, 1924, Max Frankenberger and Henry Kleeman, then owners of two store rooms on Summers Street, numbered 156 and 158, respectively, had a distress warrant issued against their tenant, Coal State Electric Company, for rents due and owing amounting to $4,650.00. By virtue of said warrant the constable levied upon the goods and chattels found in store room No. 158, then occupied by the electric company, including certain electric light bulbs. On the day set for the sale, May 31, 1924, the Western Electric Company instituted an action in detinue against said constable claiming title to said electric light bulbs. On interpleader the Western Electric Company was made plaintiff and Max Frankenberger and Henry Kleeman were made defendants. Later, by agreement of counsel, General Electric Company was substituted for the Western Electric Company as party plaintiff. This case came on for hearing before the court, in lieu of a jury, on an agreed statement of facts. The circuit court found that the property levied upon was subject to sale under the distress warrant and that the plaintiff, General Electric Company, was not entitled to recover possession of said electric light bulbs claimed by it. From this ruling the General Electric Company appeals.

Counsel for the defendants in error maintain that the judgment of the circuit court should be affirmed, for the following reasons:   (1) That the contract under which the goods were consigned to the Coal State Electric Company was in fact a conditional sale of goods, and that such reservation of title is void as against third parties—it not having been recorded as provided for in chapter seventy-four, section three or chapter ninety-nine-A, section five, of the Code; and (2) that the Coal Electric Company was a ''trader'' under chapter one hundred, section thirteen, Code, and that any property brought upon the premises, acquired or used in its business, is subject to the distress.

The agreed statement of facts discloses that the Coal State Electric Company, on the first day of July, 1923, accepted an agency, for the period of one year, under Form A, Appointment of Agent, from the General Electric Company, for the sale of metal filament large incandescent Sunbeam Mazda lamps, and was operating under said appointment at the time of the distress.   Briefly, under said ''Appointment as Agent'' the manufacturer agrees to maintain on consignment in the custody of the Coal State Electric Company a stock of Mazda lamps, the same to be and remain the property of said manufacturer until sold, and the proceeds to be held in trust for the benefit and for the account of said manufacturer; the manufacturer retains the right to determine the sizes, types, classes and quantity of lamps, fix prices, and determine the length of time they shall remain in stock, assumes no liability for inability to furnish lamps, requires lamps to be stored, housed and displayed for sale only in agent's regular place of business, and that said lamps be subject to its orders and inspection; the manufacturer authorizes Coal State Electric Company to distribute lamps from said stock to certain agents on written notice, to sell to any consumer within its territory, and to deliver lamps to any purchaser under written contract with said manufacturer; said agent has no authority to sell or transfer or in any way dispose of lamps except as expressly provided, and shall not sell or otherwise distribute lamps from the manufacturer's

stock except in packages or wrappers supplied by the manufacturer, containing a notice substantially in the following form: ''The lamp(s) contained herein is (are) manufactured by the National Lamp Works of General Electric Company, which sells its large Mazda Lamps exclusively through its own Branches and Agents direct to the consumer, except when such lamps are sold to Central Lighting Stations.'' Said Appointment further requires said agent to render monthly reports covering sales and to pay said manufacturer at monthly periods an amount equal to their total sales, less a certain commission; to render a complete inventory whenever required, at the same time paying said manufacturer the value of all lamps lost or missing from or damaged in said stock; books are likewise to be held open for inspection; agent's discount to be deducted at the time of forwarding proceeds to said manufacturer. On the insolvency of the agent or its failure to make report or remittance, or failure to comply with any provisions of the Appointment, the manufacturer may cancel and terminate the agency. Does this contract show a conditional sale or a consignment to an agent for sale? There is hardly any conflict as to the law on the distinction between a sale and a consignment. The whole difficulty arises from the application thereof to the particular facts of each case. It is, of course, of the greatest importance to determine the character of every transaction, for if it is a sale, title to the property, with all its attendant advantages and responsibilities, passes, while if it is a consignment it does not, being merely an agency for the purpose of sale. The primary test as to the character of the contract is the intention of the parties to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded. *Vermont Marble Co.* v. *Brow,* (Cal.) 50 A. S. 37; *Fleet* v. *Hertz,* (Ill.) 94 A. S. R. 192, and notes at page 241. The true question is whether the retailer is at sometime to be the owner of the goods, or whether he is to act as an instrument in passing the wholesaler's title direct to the consumer. ''A sale contemplates that, at sometime, the title shall pass to the vendee, and that, at sometime

and in some manner, he shall pay the purchase price. A bailment contemplates that the title shall not pass to the bailee but remain in the bailor, and that the property shall be returned to the bailor or be disposed of as he shall direct.'' *Norris* v. *Boston Music Co.*, (Minn.) 151 N. W. 971. In deciding that a contract of this sort has created a mere agency or consignment, courts have been influenced by the following considerations: (1) That the wholesaler reserved the right to dispose of the goods or take them back at any time he desired. *In re Gault*, 120 Fed. 64; *John Deere Plow Co.* v. *McDavid,* 137 Fed. 802; *Renoe* v. *Western Star Mill Co.*, 53 Kan. 255; *Packard Piano Co.* v. *Williams*, 167 Mo. Ap. 515; *Akin* v. *Baldwin Piano Co.*, 62 Okla. 239; *Keystone Watchcase Co.* v. *Bank*, 194 Pa. St. 535. (2) That the wholesaler controls the retail price. *Keystone Watchcase Co.* v. *Bank, supra.* (3) That there was to be no duty on the part of the retailer to pay until and unless he sold the goods. *Butler Shoe Co.* v. *U. S. Rubber Co.*, 156 Fed. 1; *Edwards* v. *Baldwin Piano Co.*, 79 Fla. 143; *Peet* v. *Spencer*, 90 Mo. 384; *Sturtevant Co.* v. *Cumberland*, 106 Md. 587. (4) That the retailer was to retain as profit a certain percentage of the receipts of sale. *Harris* v. *Coe*, 71 Conn. 157; *Robinson* v. *Chapline*, 9 Iowa 91; *Packard Piano Co.* v. *Williams, supra.* (5) That the agent or retailer shall keep account books regarding the goods sent him by the wholesaler, and their proceeds. *Plymouth Rubber Co.* v. *Knott*, 187 N. Y. S. 914. (6) That both retailer and wholesaler were to have a right to sell from the stock delivered to the retailer. *In re Wright-Dana Hardware Co.* 211 Fed. 908. (7) That the contract contained no provision for the passage of property to the retailer. *Bank* v. *Goodyear*, 90 Ga. 701; *Cortland Wagon Co.* v. *Sharvy*, 52 Minn. 216. The contract here under consideration, in addition to containing in effect the provisions heretofore enumerated, provides that each article sold be incased in a wrapper upon which is printed a statement to the effect that the Mazda lamps are sold exclusively by the manufacturer through its own branches and agents direct to the consumer. A reference to this contract, as epitomized here, seems to clearly disclose an agency. In view of this fact, the present case does not come within the

Conditional Sales Act, requiring property to be recorded, but falls within the rule announced by this court in *Barnes Safe and Lock Co.* v. *Bloch Brothers Tobacco Co.*, 38 W. Va. 158. In that case the Safe and Lock Company had consigned to the Globe Contract Company certain safes to be sold by the latter company, and if no sales were made, the safes were to be returned to the consignor. The Globe Contract Company was engaged in other business in its corporate name, and while transacting such other business, it undertook under a contract, similar in many respects to the one here under consideration, to act as an agent for said Lock and Safe Company, which fact was plainly painted on every safe handled by it. The court there held. "If a contract of agency is entered into, and the principal agrees to furnish to the agent on consignment certain manufactured articles, at a stipulated price, to be paid for when sold, such articles, when so furnished, remain the property of the principal until sold to a bona fide purchaser; and they cannot be executed and sold to pay the debts of the agent; and, if so sold, the purchaser gets no title to any such articles, as against such principal." The ruling as to agency announced in the last cited case is controlling here. The contract in the instant case does not fall within either the letter or the spirit of chapter seventy-four, section three or chapter ninety-nine-A, section five, of the Code. Nothing but sales of goods and chattels are contemplated by those provisions. This is not one of sale. *Bakeries* v. *Miller*, 92 W. Va. 442.

The other point relied on by the defendant in error is that the Coal State Electric Company was a "trader" under chapter one hundred, section thirteen, Code. It involves the construction of a statute which has seldom been invoked, so far as the decisions of this Court show. The statute reads as follows: "If any person shall transact business as a trader, with the addition of the words 'factor,' 'agent,' 'and company,' or 'and co.,' and fail to disclose the name of his principal or partner by a sign in letters, easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the town or county wherein

the same is transacted, or if any person transact such business in his own name, without any such addition, all the property, stock, choses in action, acquired or used in such business, shall as to the creditors of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant." This statute is identical with the Virginia statute. It was taken from the Virginia Code of 1860, and adopted upon the formation of our State as a part of our law. The evident purpose of the Legislature in enacting the statute, as the title of the act shows, was to prevent persons carrying on business under false or fictitious names and firms. The object was to prevent fraud; to compel persons transacting business as a trader to disclose the name of the real owner of the business, if any others there be; to prevent any shifting or evasion of ownership and liability for debts in case of controversy; and to preclude the assertion of secret claims of ownership against creditors of him who has conducted the business, possessed the property, and appeared to be its owner. *Hoge* v. *Turner*, 96 Va. 624. Is the Coal State Electric Company such a trader as contemplated in the statute? It appears from the agreed statement of facts that said company "carried on the business of a general merchant in electric equipment both wholesale and retail". One who carried on a general mercantile business was held to be a trader. *Morris* v. *Grocery Co.*, 46 W. Va. 199. To constitute one a trader, under this statute, he must be both a buyer and a seller, or a barterer of goods for profit. *Cable Co.* v. *Mathers*, 72 W. Va. 807. In the last mentioned case, the court approved Webster's definition of trader as "One who engages in trade or commerce; one who makes a business of buying and selling or a barterer; a merchant". A corporation engaged in buying and selling motor vehicles and the accessories in its corporate name was a trader within this act. *Nusbaum* v. *Bank*, 132 Va. 54. A general merchant is universally held by the courts to be a trader. 38 Cyc. 916, and cases there cited. Under the aforegoing authorities the Coal State Electric Company was clearly do-

ing business as a trader, within the meaning of the statute. It was doing business in its own corporate name, without the addition of the words "factor," "agent," "and company," or "and co.," and therefore does not come under the first provision of the section. Here the words "or if any person transact such business (trader) in his own name, without any such addition," appearing in the second provision of said section, are designed to meet the case of one who transacts business without any such addition, as is mentioned for illustration, and not in the name of some person other than himself, who is the real owner. Whoever transacts business without doing it in the name of another, does it in his own name and character, necessarily. In *Edmunds* v. *Hobbie Piano Co.,* 97 Va. 588, the court said: "There is as much, if not greater, reason for protecting creditors of a trader doing business in his own name from the secret claims of third parties, as there is for protecting creditors of a person transacting business as a trader with addition of the words [of statute], who has failed to disclose his principal or partner in the manner provided by the statute. In the latter case the creditors know they are dealing with one who does not claim to be the sole owner of the business, whilst in the former they have the right to believe that the trader is doing business entirely on his account, and is the sole owner of the goods in his possession. To allow him, or third persons who have placed their goods in his possession to be used and sold as if they were his own, so far as the public can see or know, to deny that he was the owner of such goods, as against his creditors, would encourage parties to do the very things which the statute was passed to prevent". Under a Mississippi statute identical with ours the Court of that state in discussing the effect of transacting business "in his own name, without any such addition", said: "This law has regard to the external indicia of ownership, and by these stamps ownership on the property, to the extent of liability to the creditors of him who appears to be the owner". *Hamblet* v. *Steen,* 65 Miss. 474. The same Court held that under this statute providing that all property acquired by any person transacting business in his own name shall, as to the creditors of such person, be liable for his debts,

that goods received by a firm doing business under the firm name, to be sold for another, are subject to attachment at the instance of firm creditors. *Bank* v. *Studebaker Mfg. Co.,* 71 Miss. 544. The statute referring to persons include corporations, if not restricted by the context. Code, chapter thirteen, section seventeen. We perceive no reason for the limitation here. *Barnes Safe and Lock Company* v. *Bloch Brothers Tobacco Co., supra,* is relied on by plaintiff in error. This decision turned on the question whether the corporation was a trader, as that was the argument advanced by counsel for the Safe and Lock Company, citing *Brown Mfg. Co.* v. *Deering,* 35 W. Va. 259, as authority. But the Court in its opinion said that it was hardly worth while to notice this claim because the corporation did not do business as a trader, within the meaning of the statute. There the corporation was chartered "for the purpose of contracting for and doing engineering work and construction of any and all kinds, and of conducting a general manufacturing business". It will be seen that it was not authorized to buy and sell merchandise or other things ordinarily the subject of traffic. If not, it was not and could not be "a trader," under the statute as interpreted by the courts. The decision there is no doubt correct, on the ground that the corporation was not a trader. The point, however, is not noticed in the syllabus at all. We do not regard it as in any wise conflicting with the views of the courts on the question here. In the instant case the agreed statement of facts makes, as has been shown, the Coal State Electric Company, to be in fact, a trader. It shows that the said corporation transacted the business in which it was engaged in its name, and that no sign was displayed at the place, disclosing that the General Electric Company had any interest therein, and that the property in controversy was used and acquired in its business. Under these circumstances, such property is, by express provision of the statute, liable for the debts of the corporation so transacting the business, and to be in all respects treated in favor of its creditors as its property. It seems to us if manufacturers can set up an agency in a trader, as in this case, with no outward or visible sign of the bailment or agency, thereby enabling such trader

to obtain credit on the faith of his apparent ownership, and then when insolvency overtakes the debtor, come forward with concealed contracts, and maintain ownership in the remnant of the debtor's goods, the statute, designed as we have shown, to put an end to secret liens or ownership would be of no avail. The wrapper containing the information that it is the manufacturer's goods and that such goods are sold direct to the consumer through duly authorized agents, avail little, if any, as notice. The goods here as bailments are of the same nature as other goods making up the stock of the merchant. The creditor would only give credit to the merchant on the general appearance and quantity of his stock. The notice on the individual lamp wrappers would be futile as to him. However, where the statute provides what shall be notice, nothing short of that suffices. Actual notice to the landlord was not shown here. It is not for us now to determine the effect of such notice.

Having determined the liability of the particular distrained property of the General Electric Company for the debts of the Coal State Electric Company, we are met with the question of the right of the landlord to distrain said goods for his rent. That he is a creditor of the Coal State Electric Company to the extent of his rent is apparent. Chapter 93, section 7, Code, provides that rent of every kind may be recovered by distress or action. The landlord here resorted to the summary remedy of distress afforded by section 11 of said chapter, instead of an action. At common law all goods and chattels found on the demised premises were subject to distress, regardless of whether the tenant owned them or had any interest therein. 36 C. J. 548. Our statute (Code, chapter 93, section 11) has modified this rule. If the landlord invokes distress he will be restricted to distrain *only* the "goods of the lessee, or his assignee or undertenant, found on the premises. * * * No goods shall be liable to distress other than such as are declared to be so liable under this section". The goods distrained in the instant case do not fall within the provision of this section. Such goods not being liable to distress, the judgment of the circuit court is reversed.

*Reversed.*