# CHARLESTON.

MIDLAND INVESTMENT CORPORATION *v.* MAY *et al.*

(No. 5940)

Submitted October 11, 1927.   Decided October 18, 1927.

FACTORS AND AGENTS—*Corporation Engaged in General Automobile Business Held "Trader," and Automobiles Stored for Sale Held Subject to Fieri Facias Lien of its Creditor (Code, c. 100, § 13).*

A private corporation which is engaged in the general automobile business and buys, sells and repairs motor vehicles, and deals in automobile accessories is a trader within the provisions of Sec. 13, Chap. 100, Code; and automobiles placed with it in its place of business by the owner for storage with power in the trader to sell same at a commission on the purchase price, which commission is to pay for both storage and making the sales, are acquired and used by such trader in the conduct of its business within the meaning of said statute, and subject to the lien of a *fieri facias* in favor of its creditor while being so used; it appearing that the provisions of said statute have not been complied with, and in the absence of other facts which would estop the creditor from asserting his lien.

(Agency, 2 C. J. § 513 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

104 W. Va.

Error to Circuit Court, Kanawha County.

Action by the Midland Investment Corporation against I. May and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*Lively & Stambaugh,* for plaintiff in error.

*Sam Silverstein,* for defendant in error May.

LIVELY, JUDGE:

I. May obtained a judgment for $1,000.00 against Glenwood Garage, Inc., October 27th, 1926, caused execution to issue thereon and levied same upon fifteen automobiles situated in the place of business of the debtor on Quarrier street, in the city of Charleston. Eleven of these automobiles were claimed by the Midland Investment Corporation as its property, and upon its petition a trial of the right of property was had before the Judge of the Common Pleas Court of Kanawha County, sitting in lieu of a jury, who adjudged that the automobiles levied upon were liable to sale under the execution, and ordered that they be sold thereunder. Upon refusal of a writ of error from the circuit court, the Midland Investment Company obtained such writ from this Court.

The facts upon which the judgment was based are stipulated. It appears that the Midland Investment Company (sometimes designated in the record as the Midland Investment Corporation), is engaged in the business of financing automobile dealers, and in the course of its business repossesses automobiles which have been sold to purchasers, which repossessed cars it stores in various garages in the city of Charleston, and elsewhere in the state. On September 10th, 1926, the Investment Company stored the automobiles levied upon with the Glenwood Garage, Inc., at its place of business on Quarrier street in said city, with the incidental authority to the Glenwood Garage, Inc., to sell the cars at stipulated prices. In case of sale 10% of the purchase price was to be paid to the garage for storage, and for making the sale. It

appears that sales had been made of cars stored in the garage after September 10th, 1926, .and that the Investment Company had paid to the garage for storage and sale of such cars $68.75 on September 18th; $36.90 on October 4th; and $32.62 on November 3rd, 1926. It is also stipulated that Glenwood Garage, Inc., is engaged in the general automobile business, buying, selling and repairing motor vehicles, and dealing in automobile accessories. Also that the contract for storage and sale on commission was verbal and hence was not put to record; and that no sign in letters easy to read was displayed at the place of business of the Glenwood Garage, Inc., showing that the cars were in the possession of the garage only for storage and sale being the property of the Midland Investment Corporation; and that no publication in a newspaper showing the agency was ever had.

The trial court held that under Sec. 13, Chap. 100, Code, the cars were subject to .sale under the execution. That section reads: "If any person shall transact business as a trader, with the addition of the words 'factor', 'agent', 'and company', or 'and co'., and fail to disclose the name of his principal or partner by a sign in letters, easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the town or county wherein the same is transacted, or if any person transact such business in his own name, without any such addition, all the property, stock, .choses in action, acquired or used in such business, shall, as to the creditors of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant." The first part of that section can have no application here, for the Glenwood Garage did not transact business as a trader with the addition of the words "factor", "agent", and "company", or "and co". If that statute is applicable here, it is only the latter part which applies, namely, "If any person transact such business in his own name, without such addition, all the property, stock, choses in action, *acquired or used in such business,* shall, as to the creditors of any such

person, be liable for the debts of such person.'' Plaintiff's in error counsel say that this statute does not govern, for the reason that the agreed facts fail to show that the cars were intermingled with the other property of the garage company in such manner as to constitute a part of the apparent assets of that company and that only such property of the garage company would be subject to its debts as was acquired or used in such business.

The agreed facts are meagre as to the facilities of the garage company for storing or handling the cars; the statement is that the cars were ''stored and placed in said Glenwood Garage, Inc., at its place of business on Quarrier street in said city of Charleston.'' Clearly the garage company had a place for housing cars. Its name would so indicate. Whether it had a sales or show room, can only be left to inference. Nor does it affirmatively appear that its other cars on sale, if it had any, were in the same room as that of the cars in litigation. Fifteen cars were levied upon, eleven of which were claimed by appellant, Midland Investment Corporation. We think it is immaterial whether these cars claimed by appellant as exempt from the execution were or were not in the same room with the other cars. They were in the place of business of the garage company, and were being sold by it in the usual cause of its business in buying and selling automobiles, and were a part of its apparent assets. Intermingling would be cumulative evidence of its apparent ownership. It may be concluded that if the cars had simply been stored there without power of sale, the statute would not apply. *Edmunds* v. *Hobbie Piano Co.*, 97 Va. 588. They would not, in that case, be used in the business of a *trader*. But the power to sell (and it appears that some of appellant's cars had been actually sold under the verbal arrangement), brings the property into use in the business of the trader. The garage company did not have exclusive power to sell, but when a car was sold, it was to receive 10% of the purchase price to cover its storage charges. The storage charges appear to have been 10% of all sales made, including the work of the dealer in finding purchasers and making sales. The payment of storage was contingent on

sales.  The sale of the cars appears to have been the gist of the agreement.  It induced and incited the garage company to be diligent in seeking and effecting sales.

The purpose of statutes of this character is to protect innocent third persons who have dealt with the trader in reliance upon the fact that the owner of the property has conferred upon the trader the apparent ownership, and right of disposal.  The possession and right to sell indicates ownership in absence of evidence to the contrary, and a similar principle applies that when one of the two innocent persons must suffer loss, such loss must be borne by him who has placed a third person in the position by whose act the loss was caused.  In dealing with this particular statute (our statute being the same as the Virginia statute), the Virginia court said in *Hoge* v. *Turner*, 96 Va. 624, 632, that the object of the legislature was to prevent fraud; "to compel any person transacting business as a trader to disclose the name of the real owner of the business, if any other there be; to prevent any shifting or evasion of ownership and liability for debts in case of a controversy; and to preclude the assertion of secret claims of ownership against creditors of him who has conducted the business, possessed the property, and appeared to be its owner."  See *Electric Co.* v. *Martin*, 99 W. Va. 519, 525.  That Glenwood Garage, Inc., was a trader within the meaning of the statute is settled by the stipulation, which says that it was engaged in the general automobile business, buying, selling and repairing motor vehicles, and dealing in automobile accessories.  The construction of this statute and its effect and application in cases similar to the present-one has been before the courts of Virginia and the Federal courts many times.  In *Chesapeake Shoe Company* v. *Seldner*, 122 Fed. 593, the Chesapeake Shoe Company consigned to Small, a retail shoe dealer, a lot of shoes invoiced at $1,000.00, who took possession under a contract alleged to be a mere consignment contract which was not recorded.  Later Small went into bankruptcy and the trustees representing his creditors took possession of the shoes.  The Shoe Company claimed the ownership of the shoes and that they were not subject to the debts of Small and therefore not assets in the

hands of the trustees. The unrecorded contract gave · compensation to Small for selling the goods, the difference between the sale price and the price as invoiced to him by the shoe company. On Monday of each week Small was required to remit with his statement of sales a check for the invoiced value of such portion of the consigned stock which had been sold. The court in applying the construction which had been given the statute by the Virginia courts said that its intent was clearly to make such goods the property of the trader, quoad his creditors, and that the trustees took title to the goods held by the trader on consignment, to which he, the trader, did not have title as between himself and the consignor. In *Capitol Motor Corp.* v. *Lasker,* 138 Va. 630, the plaintiff, a corporation, engaged in the business of supplying credit to dealers in automobiles instituted an action of detinue against defendant, a dealer, on an agreement between them by which the automobiles were placed upon consignment with the dealer each under a separate trust receipt, setting forth the terms and conditions upon which the cars should be held, which trust receipts were not recorded. The court held that the automobiles thus placed on consignment with the dealer constituted in part his apparent assets, and would be subjected to payment of the claim of his creditors under the traders' act. In *Nusbaum* v. *City Bank,* 132 Va. 54, a truck had been consigned to a corporation engaged as a trader in buying and selling motor vehicles and their accessories in its corporate name, the contract of consignment not having been recorded, and it was held that the truck so consigned was subject to the trader's debts under the act in question. In *Edmunds* v. *Hobbie Piano Co.,* 97 Va. 588, the piano company was a corporation engaged in buying and selling musical instruments. Two pianos were consigned to it for sale under written contract, which was not recorded, and were in possession of the piano company at the time an execution was levied thereon for a debt owing to Edmunds, a creditor of the piano company, and they were held to be subject to the execution under the traders' act. Another piano originally owned by the Hobbie Piano Company was sold by it under conditional payments, to a purchaser who

failed to pay for it. The purchase money notes therefor with the rights of the Hobbie Piano Company were assigned to the First National Bank. The purchaser made default in the payment, and the piano company by the direction of the bank repossessed it and was holding it for the bank with authority from the bank to make sale of the same, when it was levied on for the debt of the creditor, Edmunds. The court held that this piano was liable to sale under the execution by virtue of the traders' act, saying: "If it were held otherwise any trader doing business under a general merchant license, apparently on his own account, could fill his store-room with consigned goods, create the impression that he was the owner, obtain credit upon faith thereof, and when his creditors demanded payment, make known for the first time that the goods were not his; and thus he and those who had intrusted him with their goods could perpetrate a fraud upon his creditors. To prevent just such frauds, was one of the objects of the statutes." Other similar decisions by the Virginia court could be pointed out. They are referred to in the cases already cited.

With the construction and interpretation of the traders' act given by the Virginia court, we are in accord, as based on sound reason, and as consonant with the decisions of other courts relative to their particular factors' and traders' acts. We have come to the conclusion that Glenwood Garage, Inc., was a trader within the meaning of the act, and that it had possession and apparent ownership of the automobiles in question, and that the same were used by it in the conduct of its business as a trader and therefore subject to the lien of the execution in favor of I. May levied by the sheriff of Kanawha County. Therefore, the judgment of the common pleas court and that of the circuit court of Kanawha County refusing a writ of error to the judgment of the court of common pleas will be

*Affirmed.*