B. E. McCulley *v.* Benjamin Blanchard, *etc., et al.*

(No. 7508)

Submitted May 9, 1933.   Decided June 6, 1933.

*Nesbitt & Nesbitt,* and *John D. Phillips,* for plaintiff in error.

*Erman L. Harrison* and *A. C. Schiffler,* for defendant in error McCulley.

Kenna, Judge:

Attachment was sworn out in an action in assumpsit brought in the circuit court of Ohio County by B. E. McCulley against Benjamin Blanchard, Alias George Lang, trading and doing business as La France Service Company.   It was levied on the stock of goods of Blanchard, including a quantity of Westinghouse electric light bulbs owned by W. T. McCullough

Electric Company. After the levy of the attachment, the owner of the bulbs filed an intervening petition asking that the property be delivered to it. This was resisted by the attaching creditor on the theory that there had been no compliance on the part of Blanchard with section 13, chapter 100, Code 1923, under which the dispute arose. The attaching creditor asserts that Blanchard was a trader within the meaning of that section, and that he neither published nor posted at his place of business, the notice required to protect the ownership of a person shipping goods to him on consignment. The electric company, owner of the goods, replies (1) that Blanchard was not a trader within the meaning of that section because he kept no general store or such place of business as is therein contemplated; and (2) that, even if held to be a trader, he was not doing business as such trader with the addition of the words "factor", "agent", "& Company" or "& Co.", nor was he doing business in his own name, but in the name of La France Service.

There is no question but that the goods were owned by the intervening petitioner. There is no question but that Blanchard failed to comply with the provisions of section 13, chapter 100, Code of 1923, in that he did not publish and post at his place of business the notices therein required. If he was a trader within the meaning of that section, then the goods in question, along with all of his other stock of goods, are liable to respond to the claims of his lien creditors, no matter to whom they belong.

The contention is made, that because customers or purchasers did not come to Blanchard's place of business (he was engaged in buying and selling small articles in the nature of novelties) to make their purchases and to transact their business, he was not a trader within the meaning of the section. We do not believe that this contention carries merit. In the first place, it is not customers or purchasers who are to be protected by the statute. It is those who are likely to extend credit to the person doing business. The fact that sales are conducted, not on the premises, but by representatives who go into the field, would not appear to affect materially the question involved. The stock of goods was maintained at Blanchard's place of business. That stock he sold, and he replen-

ished it by purchases from time to time. It was his capital devoted to the transaction of his business. It was upon the strength of its apparent value that credit was extended to him. It is our opinion that Blanchard's place of business was a "house wherein such business was transacted" and that in that respect he was "a trader" within the meaning of the statute.

In determining whether Blanchard was a trader within the meaning of the section, the only remaining thing to be considered is whether or not a person, to be a trader, must be doing business in his own name or in some fictitious name, using the identical firm name endings quoted in the statute, or, on the other hand, whether the obvious purpose and intention of the statute is to be carried out, even to the extent of exceeding its technical verbiage, although it is in derogation of the common law.

It is urged that this statute should be strictly construed because of the fact that it is in derogation of the common law, and that that strict construction should take the form of holding that the statute is applicable only to those persons coupling with the name under which they are doing business the quoted named endings used in the statute. This would mean that a person desiring to do business, not in his own name, could evade the entire effect of this statute merely by choosing some name other than his own and avoiding the quoted firm name endings used in the statute. We cannot believe that such a construction would eliminate the mischief that the legislature plainly intended to overcome. We must construe this, as all other statutes, to do this if possible even though it is in derogation of common law. The rule that statutes making innovations upon the common law are to be construed strictly, steps in only when the statute in question is susceptible of more than one construction. We do not believe that this statute is susceptible of the construction sought to be placed upon it by the plaintiff in error. To place that construction upon this statute, in our opinion, would practically nullify its effect to those seeking to avoid it. The statute means to require, where goods of another are being handled in stock, a disclosure of that fact upon penalty of having the goods regarded as the property of the ostensible owner in so far as the in-

terest of lien creditors of the ostensible owner are concerned. If liens are perfected against the goods before the rights of the true owner are asserted, then the liens must be honored. That is what occurred in this case.

While it was not then a point for discussion, this court in *General Electric Co.* v. *Martin*, 99 W. Va. 519, 526, 130 S. E. 299, referred to the trade name endings quoted in the statute as being for purposes of illustration.

A similar case was before the supreme court of appeals of Virginia in *Seventh Street Garage Co., Inc.*, v. *Mercer, Sheriff, et al.*, 142 S. E. 350. The Virginia statutes, both sections 13 and 17 are substantially like our own. (Serial Sections 5224 and 4722(1), Va. Code of 1930.) In that case, the trader was not doing business with the use of one of the postfixes found in the statute, neither was he doing business in his own name. He had not complied with either section. The court held that the statute was applicable to him and affirmed the trial court in holding the stock of goods of the trader subject to the liens of executions as against the intervening owner's claim.

A further consideration is that Blanchard did not comply with the statute requiring registration of fictitious or assumed name of persons doing business under such names. In failing to do so, he was guilty of a misdemeanor. Were we not holding that he is within the terms of the statute because he was doing business in a fictitious or assumed name, and because the fact that he had in stock the goods of another was not disclosed, could we, in any event, permit advantage to be taken of the fact that he was guilty of a violation of the law?

Blanchard had seen fit to take an assumed or fictitious name under which to do business. He did not comply with section 17, chapter 100 of the Code of 1923, by filing in the office of the clerk of the county court of the county in which he did business a certificate setting forth the true and full name of the person or persons owning and conducting such business. This section explicitly provides that business shall not be so conducted. Having violated it, can we now permit it to be said that Blanchard or the electrical company can make a point of the fact that he was not doing business as "agent", "factor", "& Company" or "& Co.", and neither was he doing business in his own name, and that consequently he

does not come within the terms of section 13, chapter 100? We do not pass upon the question of what the effect under section 13 of a full compliance with the provisions of section 17 would be, but we have no difficulty in holding that a person who fails to comply with the provisions of section 17, giving them the full right to use an assumed or fictitious name in conducting a mercantile business, cannot, for the purposes of section 13, be heard to say that they are not conducting that business in their own name. The law does not recognize the fictitious or assumed name unless the right to use it is lawfully acquired.

In the light of the foregoing, it is our opinion that Blanchard was conducting business as a trader within the meaning of section 13, chapter 100, Code of 1923, and, further, that for the purposes of this case, he was conducting such business in his name. He, therefore, was within the terms of the statute. Being within its terms, it appears that he has failed to comply with it by not posting in a conspicuous place at his place of business the notice required by section 13. This being so, his entire stock of goods, including that claimed by the electrical company upon their intervening petition, is subject to the lien of the attachment.

We therefore affirm the action of the lower court in dismissing the intervening petition of the electrical company.

*Affirmed.*