SAMUEL ADAMS, plaintiff in error, *vs.* WILLIAM H. ADAMS, defendant in error.

1. Under the provisions of the act of 1866, the County Judge has no jurisdiction to bind out colored minor children as apprentices, unless such minor children are residents of the county and their parents reside out of the county, or are dead, the profits of whose estate are insufficient for their support and maintenance, or their parents, if residing in the county, are from age, infirmity, or poverty, unable to support them.

2. When the mother and reputed father of illegitimate children have intermarried, and the father recognizes the children to be his, the children are rendered legitimate under the Code, and such father of colored minor children, the mother being dead, is entitled to the custody and control of them.

*Habeas corpus* from Dougherty County.    Decided by Judge VASON, Chambers, February, 1867.

The petition of Samuel Adams alleged that he was the father of Tucker, Francis, and Zachariah Adams, minors, and that they were held in custody by William H. Adams, of Baker County, without any lawful authority, &c.

The answer admitted the custody of the minors as charged, except the unlawfulness of it.    It set up that he held them by indenture from the County-Court of Baker County.

At the hearing, the petitioner in his own behalf swore that he was the father of said minors; that the oldest was about thirteen, and the youngest about eleven years old; that they were residing in Dougherty County until they were taken away by some one without his knowledge or consent, and taken possession of by defendant in Baker County; that witness lived with defendant in Baker County last year, where the children all lived; that he, they, and their mother belonged to said defendant while in slavery; that their mother and witness lived together as man and wife until she died, some time last summer; that after her death witness married another woman, who lived at Mr. Dykes', in Dougherty County, and witness having three other small children (by his first wife) who were unable to work, took them to his present wife for safe keeping; that the three in contro-

versy had been engaged to defendant for that year, and were left with him until shortly before Christmas, when witness hired them to Dykes for $150.00 for the year ensuing, and delivered them to Dykes, who kept them till the latter part of January, when they were taken away; that said defendant and Dykes were close neighbors; that when the children in controversy were born, witness had a wife at Thomas Pearson's, some two or three miles from defendant's residence, and witness went to see that wife Saturday nights; that when the two oldest children were born their mother had no husband, but habitually slept with witness all the time for two years before the birth of the oldest; that witness and said mother both lived with and belonged to defendant; that after the birth of the two oldest their mother married another man, named Taylor, who lived with Richard Griffin, but during this marriage witness continued to sleep with said mother as before, and before the youngest of the three in controversy was born, said Taylor died; that witness knows the children are his; he always claimed them, and said mother always called them his; that while witness and said mother were cohabiting, witness' wife was sold and carried away, and witness married another woman, Frances, and lived as her husband till she bore a mulatto child; then witness quit her and married the said mother of the children in controversy, and lived with her till her death, and as her husband and the father of the said children, always controlled and claimed them; that defendant owned said children (before they were free), and raised them, and had frequently since tried to get them from witness, but witness refused to let him have them; that the children in controversy are all able to support themselves.

Petitioner then introduced and examined ISAAC ADAMS, who testified that he was acquainted with petitioner, defendant, and the three children in controversy; that witness once belonged to defendant, and so did petitioner and the children and their mother, until they became free; that petitioner always claimed the two oldest children as his; witness heard that, to some persons, petitioner had disowned the

children, but he never disclaimed them to witness ; that when the two oldest were born, and for a year or two before the birth of the oldest, petitioner and their mother usually slept together; that witness had seen them go to bed together; that during that time petitioner had a wife some distance from home, and went to see her on Saturday nights, but usually slept with said children's mother the remainder of the week; that the mother always said the three children were petitioner's; that after the birth of the two oldest, their mother married a man who did not live on the plantation with her, but some two or three miles away; but this man died before the birth of the youngest of said three in controversy; that during all this time petitioner continued to sleep with said mother as before; that petitioner's wife was sold and carried away, and petitioner married another woman in the neighborhood, and kept her until she bore a mulatto child, and then quit her and married the mother of said children, and lived with her as her husband till her death; that petitioner and said mother commenced some twelve years ago to live as man and wife ; and that defendant owned and raised the children.

On cross-examination, he testified that when negroes became free he heard the petitioner say said children in controversy were not his, and that he intended to take the three youngest, that were his, and would not take these three; that petitioner did take said three youngest ones, and left the others as defendant's; and that petitioner never had the mother of the children for a wife till about one year after the youngest of the three in dispute was born.

Plaintiff then examined ROBERT A. DYKES, who testified that he had been neighbor to defendant and knew the mother of said children and the children and petitioner for about six years ; and that said mother (till her death) and petitioner lived together as man and wife ; that they all lived with defendant till a short time before Christmas last; that petitioner, having a wife at witness' house, hired said three children to witness for one hundred and twenty dollars and their board and clothing ; that the children came to his house shortly

Adams *vs.* Adams.

before Christmas, and remained there under that contract till about the last of January or the first of February, when, in his absence, they were carried away from his house without his knowledge, approbation, or consent; that the next he heard of them defendant had them.

Plaintiff closed here.

Defendant examined SILAS ADAMS as a witness, who testified that he was defendant's brother; that he did not remember to have heard petitioner claim said three children as his, but heard him say last summer that they were not his; that petitioner and said mother were married about a year after the birth of the youngest of these children, and after said marriage had three other children, which petitioner took away some time last summer; that about a week before Christmas petitioner took the three in controversy from defendant's residence; that petitioner had a wife before these children were born, and went to see her; that she was sold and carried away, and petitioner married another woman and then quit her because she had a mulatto child; that petitioner then married the mother (of these children), and they lived as man and wife till her death, last summer; that petitioner was a great run-about after the women; that petitioner carried the children in controversy away from defendant's, in Baker County, and out of the county, without defendant's knowledge or consent, and against his will.

Defendant then swore in his own behalf that he owned all of said negroes while they were slaves, and they all lived with him last year, and the mother died last summer; that about a month before Christmas petitioner was of no service to witness, was running about in violation of his contract with witness; that before the children were born petitioner had a wife at a neighbor's, whom he visited as negroes do, and witness thought was there most of his time at night, as he was frequently missing at night; that about a year after the birth of these children petitioner, with witness' consent, married said mother, and lived with her as his wife till her death; that he had never conversed with petitioner on the subject, and knows not whether he had

claimed or disclaimed these three children; that at the death of the mother, she, petitioner, and the children, all lived with defendant.

Defendant then read in evidence an indenture, made in Baker County (though the venue stated is Dougherty County), 2d February, 1867, between Benjamin F. Hudsputh, as Judge of the County-Court of said County of Baker, and defendant, whereby said children in controversy were bound as apprentices to defendant till their several majorities. The indenture recited that it had been made to appear to said Judge that said children were orphans, and left without any provision for their support, and were likely to become a charge to said county, and ended with recitals of his duty and obligation to clothe and educate them, and his power as guardian over them according to law. It was tested by " J. Quarterman."

The evidence here closed.

The Court restored the children to the custody of defendant.

To this decision and judgment petitioner excepted, and now says the Court erred—

1st. In holding said indenture binding; because it was not witnessed as a deed, and because it did not therein appear that said minors were residents of or domiciled in Baker County.

2d. In holding that said instrument was only voidable, and could not be collaterally attacked, but must be attacked in the County-Court of Baker County.

3d. Because the subsequent marriage of the petitioner and said mother legitimatized the children, and gave petitioner a right to their custody.

4th. Because petitioner, as father of these illegitimates, was bound for their support and maintenance.

5th. Because the children were domiciled in Dougherty County, and if taken to Baker County the County-Court thereof had no jurisdiction over them, and said indenture might be therefore attacked in any form, when sought to be used.

. 6th. Because the mother has control of all her children while with her, and after her death the father of them has such control.

STROZIER and SMITH, for plaintiff in error.

WRIGHT and WARREN, for defendant in error.

WARNER, C. J.

1. Had the Judge of the County-Court of Baker County jurisdiction to bind out the three children as apprentices to defendant under the act of 17th March, 1866?

To have conferred jurisdiction upon the County-Judge of Baker County, these children must have been *residents* of that county, their parents dead, or residing 'out of the county, the profits of whose estate was insufficient for their support and maintenance. If their parents resided *in the County of Baker*, and from age, infirmity, or poverty were unable to support them, then the County-Judge would have had jurisdiction to bind them out as apprentices. This pretended indenture of apprenticeship is dated on the 2d day of February, 1867. The record discloses the fact that these children were removed from Baker County to Dougherty County by the petitioner a short time before Christmas, 1866, and hired to Dykes for $150.00 for the year 1867, where they remained under his contract until the last of January, 1867, when they were taken away by some one without petitioner's knowledge or consent, and found in possession of defendant, who claims them as his apprentices under the pretended indenture set out in the record.

Upon this statement of facts, the County-Judge of Baker County had no jurisdiction to bind out these children to the defendant as apprentices. They did not reside in the County of Baker, but in the County of Dougherty, where they had been hired by their father for the year, for their board, clothing, and *wages besides*, so that there is no pretext that they would become chargeable to the County of Baker for their support and maintenance. This act of the County-Judge, binding these children as apprentices to defendant, was simply

16

void, a mere nullity, and may be attacked whenever and in whatever way it is sought to be used as a valid act.    Towns vs. Springer, 9th Geo. Rep., 130.

2. According to the facts stated in the record, these children were the *legitimate* children of the petitioner, and he had the legal right to their custody.    By the 1737th section of the Code it is declared that "the marriage of the mother and the reputed father of an illegitimate child, and the recognition of such child .as his, shall render the child *legitimate;* and in such case the child shall immediately take the surname of his father.    The mother and reputed father of these children were married, the children recognized by him as his children, and the mother is dead.    In our judgment, the petitioner is entitled to the custody and control of these children, and it was error in the Court below in remanding them back into the possession of Wm. H. Adams, the defendant.

Let the judgment of the Court below be reversed.