# Richmond.

## WILLIE GOODMAN, ETC. V. JAMES GOODMAN, ETC.

### March 22, 1928.

#### Absent, Burks and Campbell, JJ.

1. MARRIAGE—*Parents Believing they had a Right to Marry—Legitimation—Wife Married to Another Man—Recognition of Son by Father—Case at Bar.*—The object of the instant suit was to have the court determine whether the money of intestate belonged to his infant son or to the brothers and sisters of intestate. Intestate and wife of another man lived together as man and wife for several years, during which time she gave birth to a son whose father was the intestate. Believing that they had a right to marry the intestate and the mother of his son were married according to the forms and ceremonies of the law. Both before and after the marriage intestate recognized the son as his son. The woman was never divorced from her former husband who was still living at the time of the institution of this suit. The trial court held that the son was the sole distributee of intestate and its judgment was upheld upon appeal.

2. MARRIAGE—*Legitimation—Sections 5269, 5270 and 5087 of the Code of 1919—Liberal Construction.*—Sections 5269 and 5270 of the Code of 1919, in regard to the legitimation of children, and section 5087 of the Code of 1919, in regard to void marriages, are remedial in their nature and should be liberally construed. When so construed it is apparent that the object and purpose of their enactment was to remove the stain and disabilities of bastardy from all "innocent and unoffending" children who, for any cause, might be classed as illegitimate.

3. MARRIAGE—*Legitimation of Children—Invalid Marriage—Sections 5269 and 5270 of the Code of 1919.*—Section 5269 of the Code of 1919 provides for the legitimation of the children of a man and women who afterwards intermarry, if recognized by the man. Every marriage is either valid or invalid, and section 5269 of the Code of 1919 does not declare that the marriage between the man and the woman shall be a valid marriage in order to legitimate a child born before the marriage. Since section 5270 of the Code of 1919 legitimates children born after the celebration of a void marriage, it seems clear that

the word "intermarry," which appears in section 5269 of the Code of 1919, is used in its broadest sense and was intended to include every marriage, valid or void, entered into in accordance with the forms and ceremonies of the law, even though one of the parties was incapacitated to enter into the marriage contract.

4. MARRIAGE—*Legitimation of Children—Section 5269 of the Code of 1919.*— Under section 5269 of the Code of 1919, if the marriage of the parents is entered into in accordance with the forms and ceremonies of the law, and the child is recognized by his father, either before or after the marriage, the conditions of the statute have been complied with and the child must be deemed legitimate.

Appeal from a decree of the Circuit Court of Nansemond county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*L. A. Howell, Jno. H. Fulcher, C. G. Archer,* and *Jas. G. Martin,* for the appellant.

*Saunders & Hutton,* for the appellee

WEST, J., delivered the opinion of the court.

The evidence in this case proves the following facts: [1] Joseph Belcher and Matilda S. Spruell were lawfully married in 1907, and lived together as man and wife for seven or eight years. They then separated and later Matilda Belcher and Charles Goodman became infatuated with each other and lived together as man and wife several years, during which time, on May 8, 1918, she gave birth to a son, James Goodman, whose father was Charles Goodman. On September 25, 1918, believing they had the right to marry, Charles Goodmand and Matilda S. Belcher married according to the forms and ceremonies of the law. Both before and

after marriage to Matilda, Charles Goodman recognized James Goodman as his son. Matilda was never divorced from Joseph Belcher and he is still living.

At the time of his death, intestate, in October, 1919, Charles Goodman was carrying war risk insurance in the sum of $10,000.00, the commuted value of which was $7,819.00, which is now in the hands of S. E. Everett, his administrator.

The object of this suit is to have the court determine whether this money belongs to James Goodman, infant son of Charles Goodman, or to the brothers and sisters of Charles Goodman. From a decree adjudging that James Goodman is the son and sole distributee of Charles Goodman, and is entitled to the $7,819.00, this appeal was allowed.

The assignments of error involve only one question: Is James Goodman the legitimated son of Charles Goodman deceased?

The answer to this question depends upon a proper construction of the Virginia statute. Sections 5269, 5270 and 5087 of the Code read as follows:

"*Section 5269. When Marriage Legitimates Children.*—If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, if recognized by him before or after the marriage, shall be deemed legitimate."

"*Section 5270. Issue Legitimate, Though Marriage Null.*—The issue of marriage deemed null in law, or dissolved by a court, shall nevertheless be legitimate."

"*Section 5087. What Marriages Void without a Decree.*—All marriages between a white person and a colored person and all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living, shall be absolutely

void, without any decree of divorce, or other legal process."

[2] These statutes are remedial in their nature and should be liberally construed. When so construed it is apparent that the object and purpose of their enact-- ment was to remove the stain and disabilities of bast- ardy from all "innocent and unoffending" children who for any cause might be classed as illegitimate.

Section 5269 should be read in the light of the other two sections.

[3, 4] Every marriage is either valid or invalid, and section 5269 does not declare that the marriage between the man and the woman shall be a valid marriage in order to legitimate a child born before the marriage. Since section 5270 legitimates children born after the celebration of a void marriage, it seems clear that the word "intermarry," which appears in section 5269, is used in its broadest sense and was intended to include every marriage, valid or void, entered into in accord- ance with the forms and ceremonies of the law, even though one of the parties was incapacitated to enter into the marriage contract. If the marriage of the parents is entered into in accordance with the forms and ceremonies of the law, and the child is recognized by his father, either before or after the marriage, the con- ditions of the statute have been complied with and the child must be deemed legitimate.

The case of *Stegall* v. *Stegall*, Fed. Cas. No. 13351, 2 Brock. 258, was decided by Chief Justice Marshall in the Circuit Court of the United States for the District of Virginia and North Carolina, in 1825. The case arose in Virginia, and the Virginia statute in force at the time, substantially the same as the present statute, provided as follows: "Where a man having by a woman one or more children shall afterwards inter-

marry with such woman, such child or children, if recognized by him, shall be thereby legitimated. The issue also in marriages deemed null in law shall nevertheless be legitimate." Va. Code 1919, section 19, page 357.

This case involved a contest over the decedent's property between his children by two wives. The decedent, John Potter Stegall, had several children by his lawful wife, Catherine; and during the existence of his marriage relations with her, he was married to Susannah Portwood, by whom he was the father of one child, Elizabeth, before, and several children after, his marriage. The decision of Chief Justice Marshall is in harmony with and supports the contention of the appellees in the instant case, as appears from the following language used in his decree:

"The court is further of opinion that the marriage of the said John Potter Stegall, deceased, with Susannah Portwood, after his marriage with the plaintiff, Catherine, and while his wife, the said Catherine, was living, was null and void, and that the said Susannah Portwood was not entitled either to dower of his real or to a distributive share of his personal estate; but that, nevertheless, by the act of Assembly of Virginia, in such case made and provided, the defendant, Nancy Smith, daughter of the said Susannah, by the said John Potter Stegall, born after the said illegal marriage of her said parents, and during the coverture, and the defendant, Elizabeth Jennett, daughter of the said Susannah, born before her said marriage with the said John Potter Stegall, but recognized by him after his marriage with her mother, and during the coverture, as his, the said John Potter's child, ought, and are, both to be deemed legitimate children of the said John Potter Stegall."

As early as *Stones* v. *Keeling*, 5 Call (9 Va.) 143, this court held that the issue of a woman by a second marriage, which took place during the lifetime of the first husband, are legitimate after the death of their father. (Syllabus.) In the course of his opinion, Judge Roane, after stating that both marriages were celebrated, and that the first existed at the time of celebrating the last, says: "This is a strong case to show the sense of the legislature, that the turpitude or guilt of the marriage shall not break upon the heads of the innocent offspring * * *. If the legislature has legalized children begotten in open fornication, where there is no marriage, or semblance of marriage, it is a reasonable presumption that they, at the same moment and by the same clause, meant also to include the offspring of marriage, which, though void in law, and unfortunate, may be nevertheless excusable and even innocent."

Judge Roane also says: "We are bound to consider this marriage innocent, for we cannot, in the proceeding, enquire into its guilt. But if it were otherwise, if the legislature should even be supposed to consider every second marriage, living a first husband or wife, as criminal, wherefore should they visit the sins of the parents upon the innocent and unoffending offspring? But this was not the temper of the legislature."

Judge Roane further says: "The construction I contend for, taken in connection with the stronger case, expressly provided for and just noticed, of children born prior to any marriage; with the general policy of our law, which is much more favorable to bastards than the law of England; with that policy which, in regulaing descents, has considered as most worthy the claims of those who stand nearest in the affections of the last occupant (and it is clear that the affections of a parent

towards his child do not at all depend upon the legal validity of his marriage), must at once overrule the arguments drawn from the critical exposition of the word null, as alleged to be understood in some legal authors on this subject, and in some of our former acts."

The case of *Stones* v. *Keeling, supra,* is cited with approval in *Heckert* v. *Hiles,* 90 Va. 390, 18 S. E. 841, and in *Hefflinger* v. *Hefflinger,* 136 Va. 289, 118 S. E. 316, 32 A. L. R. 1088.

In *Carroll* v. *Carroll,* 20 Tex. 731, according to the syllabus, the court held, that "children born before the marriage of their parents, who afterwards intermarried, whether such marriage is valid or null, it would seem, are legitimated by the statute."

The law in force in Maryland in 1875, when the case of *Hawbecker, et al.* v. *Hawbecker, et als.,* 43 Md. 517, was decided, provided as follows: "If any man shall have a child or children by any woman, whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, by virtue of such marriage and acknowledgment, be thereby legitimated, and capable in law to inherit and transmit inheritance as if born in wedlock." Christian Hewbecker had by his wife, Catherine, four children, born in lawful wedlock. During the life of his wife he also had six other children by another woman. His wife died in 1854 and in 1855 he was married to the mother of the six children. The court held that "the children of an intercourse adulterous on the part of the man, are no less innocent and unoffending than the offspring of any other illicit connection," and that all the children should share equally in the father's estate.

Sections 1398 and 2078 of the Kentucky statutes are practically in the same language as sections 5269 and

5270 of the Virginia Code. In *Bates* v. *Meade*, 174 Ky. 545, 192 S. W. 666, the Court of Appeals of Kentucky was called upon to decide the precise question now before the court in the instant case. William D. Meade married a Mrs. Smith, whose husband, Samp. Smith, had abandoned her six years before and had not been heard from since. Two years before the marriage Mrs. Smith had a child by Meade, whose name was Newton Meade; and a few weeks before the marriage she gave birth to another child by him, whose name was Robert Meade. After the marriage she was the mother of three other children by him. William D. Meade, both before and after his marriage to Mrs. Smith, recognized Newton and Robert as his children. The question was whether Newton Meade and Robert Meade were to be deemed the legitimate sons of William D. Meade.

Section 1398 of the Kentucky statute reads as follows: "If a man having had a child by a woman, shall afterwards marry her, such child, or its descendants, if recognized by him before or after the marriage, shall be deemed legitimate."

The court held that under section 1398, *supra,* Newton and Robert Meade were legitimated by the marriage of their parents and entitled to share in their father's estate, although the marriage was void on account of the mother having a living husband from whom she was not divorced.

Section 2098 of the Kentucky statutes provides: "The issue of an illegal or void marriage shall be legitimate  *  *."

Judge Carroll, in the course of his opinion, commencing on page 668 (174 Ky. 553), says: "In accordance with the trend of these authorities, which reflect the legislative spirit, and many others of a like nature that might be referred to, we are of the opinion that

under section 1398 the children of an unlawful intercourse will be legitimated by the subsequent marriage of their father and mother, although it may appear that at the time the children were begotton and born the mother was the wife of another man, and the father the husband of another woman, and, of course, the same conclusion would necessarily follow if one of the parties was married and the other single. So that, looking to section 1398 alone, Robert and Newton Meade were legitimated by the marriage of their father and mother and his recognition of them as his children. *  *  *  *  *

"It is a general and well-settled principle in the law of marriage that if one of the parties is at the time the lawful wife or husband, as the case may be, of another person, the marriage is void as between the contracting parties, and it is so declared to be in this State by section 2097 of the statute. *  *  *

"But the fact that such a marriage will be void as between the parties to it, or that the guilty one of the contracting parties will have committed the crime of bigamy under section 1216 of the statutes, does not necessarily mean that the children begotten and born before such marriage shall not be legitimated by the marriage, or that such children will be denied the right to inherit from their father under the statute of descent and distribution.

"That a marriage may be void for some purposes and yet valid for other purposes is clearly shown by section 2098, providing that the children born of a marriage which is void shall nevertheless be legitimate. As between the parties, the marriage may not only be prohibited by law, but, where it is bigamous, a crime for which the contracting parties, or that one guilty of bigamy, may be severely punished, and yet the children

of the prohibited and criminal marriage are by the very words of the statute legitimated.     *     *     *     *

"Turning now to sections 1398 and 2098, it will be seen that they provide for two different states of case—one when the child is born before the marriage takes place; the other when it is the offspring of a void marriage. But in both sections the legislative intent was the same—to save the children from illegitimacy if a marriage was solemnized between the parties, and it was not an incestuous marriage or a marriage between a white person and a negro or mulatto. If, then, it be conceded, as it must be under the plain letter of section 2098, that the issue of a void marriage shall be legitimate, we perceive no sound reason why this legitimating principle should not be read into section 1398 so as to make legitimate children of the parties born before the marriage, although their marriage was prohibited by law and the offender against the bigamy statute guilty of a felony. If the issue of a void marriage are legitimate under section 2098, why should not the issue before the marriage be made legitimate under section 1398, although the marriage was void? The same reasons that would save the child of a void marriage from illegitimacy should save the child born before marriage and thus put the child of a void marriage on the same footing with the child born out of marriage, but whose parents subsequently married.     *     *

"Our conclusion, therefore, is that when a marriage that is not incestuous, or between a white person and a negro or mulatto, is solemnized according to the forms of law, although it may be for other statutory reasons a void marriage, or void because a former and undivorced husband or wife was living, section 1398 will legitimate the children born before the marriage."

Appellants, to sustain their contention that section 5269 legitimates children born before the marriage of their parents only where such marriage is legal and valid, rely on *Greenhow* v. *James' Ex'or*, 80 Va. 636, 56 Am. Rep. 603, and *Cumming* v. *Cumming*, 127 Va. 16, 102 S. E. 572.

In *Heckert* v. *Hiles' Admr.*, 90 Va. 391, 18 S. E. 841, the court, speaking through Judge Lacy, said: "But it is contended by the counsel for the appellants that a recent case in this court has substantially overruled *Stones* v. *Keeling*, and they cite *Greenhow* v. *James' Ex'or*, 80 Va. 636; but we do not so regard it. That was the case of the illegitimate children of a white person by a negro, who left the State and were married abroad. The distinction is sufficiently drawn in the opinion in that case; and in the case of *Stones* v. *Keeling*, *supra*, Judge Roane, who delivered one of the opinions in that case, does the same on page 148, saying: 'The law concerning marriages is to be construed and understood in relation to those persons only to whom the law relates, and not to a class of persons clearly not within the idea of the legislature when contemplating the subject of marriage and legitimacy.' The case of *Greenhow* v. *James* does not affect this case, nor the case of *Stones* v. *Keeling*, and the last-named case is a distinct authority on this case, and we think upon the plain terms of the law, and the reason of the legislature in enacting the same, is correct."

Since the decision in the *Greenhow Case* does not materially affect the case of *Stones* v. *Keeling* or *Heckert* v. *Hiles' Admr.*, it is of little value to the appellants. and need not be considered further.

The case of *Cumming* v. *Cumming*, 127 Va. 16, 102 S. E. 572, involved the question of the validity of an.

antenuptial contract, entered into in contemplation of marriage, by and between the plaintiff and the defendant; and the husband's right to an absolute divorce on the grounds of cruelty and desertion.

A careful reading satisfies us that Judge Sims did not intend by anything said in the course of his opinion to construe section 5269 of the Code. If he did, it was not necessary to the decision of the questions at issue and was *obiter dictum.*

There are cases from other jurisdictions, upon which the appellants also rely to sustain their construction of section 5269. See *Adams* v. *Adams*, 154 Mass. 290, 28 N. E. 260, 13 L. R. A. 275; *Baylis* v. *Baylis*, 207 N. Y. 446, 101 N. E. 176; *In re Gilbert* and *In re Moncrief*, 235 N. Y. 390, 139 N. E. 550; *Olmsted* v. *Olmsted*, 190 N. Y. 458, 83 N. E. 569, 123 Am. St. Rep. 585.

Some of these cases sustain the appellants' contention that a child born before any marriage by its parents can be legitimatized only by a marriage between them thereafter which is legal and valid. The decisions in these cases are based upon the New York and Massachusetts statutes which are not identical in all respects with the Virginia statutes governing the legitimization of illegitimate children.

The cases cited to sustain the views herein expressed are supported by the better reason and should be given the greater weight as authority. In so far as the New York and Massachusetts cases are in conflict with the conclusions we have reached in this case, we decline to follow them.

The decree will be affirmed.

*Affirmed.*