# Richmond

JOHN R. HENDERSON, III v. DORIS LUSHBAUGH HENDERSON.

January 12, 1948.

Record No. 3259.

Present, All the Justices.

The opinion states the case.

*J. H. Rives, Jr., Albert F. Anderson* and *E. W. McCaul,* for the appellant.

*E. B. White* and *James C. Goodwin,* for the appellee.

Spratley, J., delivered the opinion of the court.

John R. Henderson, III, hereinafter referred to as the appellant, and Doris Virginia Lushbaugh, hereinafter referred to as the appellee, entered into a ceremony of marriage on July 4, 1942, in Montgomery, Alabama. This was the first marriage for the appellant and the second for the appellee, as indicated by their statement in the application for the marriage license. One child, John R. Henderson, IV, was born of the said union.

In May, 1946, the appellant instituted this proceeding. He filed his bill of complaint praying for a divorce from the appellee on the grounds of desertion, and asking for the custody of the infant child of the parties. The appellee answered and filed a cross-bill praying that she be granted a divorce from the appellant on the grounds of cruelty and desertion, for custody of the child, and maintenance and support of the child and herself.

After depositions of witnesses for the appellant had been taken, and the evidence of witnesses for the appellee was in the process of being taken, it was discovered by counsel that the marriage of the parties was entered into within less than four months from March 30, 1942, the date of a decree entered by the Circuit Court of the city of Clifton Forge, granting James N. Tucker a divorce from the appellee. By that decree, it was adjudged that, "the marriage heretofore existing between said parties is hereby dissolved and annulled; but neither of said parties shall remarry for a period of six (6) months from the date of the entry of this decree."

Virginia Code, 1942 (Michie), section 5113, in effect

when this decree was entered, was amended by Acts 1944, chapter 142, page 181, and the six months period reduced to four months.

The taking of evidence was suspended until the new information could be presented to the trial court. Subsequently, the appellant filed what he termed a "special plea," setting out the newly discovered fact, and praying that his marriage to the appellee be declared void and of no legal effect, and that evidence be taken to determine which of the parties should have the custody of the infant child, born of their marriage, then about three years of age. The appellant filed, in addition, a petition asking for the temporary custody of the child. The appellee filed an answer to the said "special plea," admitting the fact that she had entered into the marriage with appellant prior to the expiration of six months from the date of the entry of the decree of divorce terminating her former marriage. She joined in his prayer that the marriage be declared null and void; but averred that the appellant had no right to the custody of the child. She also filed a demurrer to the petition of the appellant, stating that, as the child was born out of wedlock, the appellant had no right to the custody of him.

The case came on to be heard on the pleadings, the evidence, and on the exhibits consisting of a certified copy of the decree of divorce entered in the cause of James N. Tucker v. Doris Lushbaugh Tucker, and a certified copy of the marriage certificate issued to the parties in Montgomery, Alabama, on July 4, 1942.

On October 29, 1946, the trial court entered a final decree holding that the attempted marriage between the parties in Alabama, on July 4, 1942, "was at that time, and now is contrary to law, null and void, and not binding upon either party thereto, * * * ."

The court further adjudged and decreed "that the child mentioned in the bill and proceedings, to-wit, John R. Henderson, IV, is legitimated under the laws of Virginia; but that as the said child was born out of wedlock, this

court has no jurisdiction, under any Virginia statute, to determine the custody thereof, and that under the prevailing rule of the common law, said custody is, and shall be, with the defendant, Doris Virginia Lushbaugh, * * * and the court is without jurisdiction under the laws of Virginia to award any support and maintenance money to the said defendant for the benefit of the said infant child or to require the complainant to pay any counsel fees for the defendant's attorneys."

The appellant duly excepted and objected. The cause was then dismissed from the docket.

The appellant's assignments of error present the following issues:

(1.) Whether a court, upon decreeing a marriage null and void, has jurisdiction and power under Virginia Code, 1942 (Michie), section 5111, to further decree as to the care and custody of children of such marriage; and

(2.) Whether Virginia Code, 1942 (Michie), section 5270, declaring that "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate," is merely a statute of inheritance or a broad statute legitimating such children for all purposes.

Further assignments of error were abandoned in the argument before us.

The issue for our determination may be summed up as follows:

Did the trial court, in decreeing the marriage to be null and void, because one of the parties was incapable of contracting a valid marriage, have jurisdiction to enter a further decree concerning the custody, maintenance and support of the infant child born to the parties?

By Virginia Code, 1942 (Michie), section 5087, it is provided that "all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living, shall be absolutely void, without any decree of divorce, or other legal process." No court proceedings are necessary to declare the nullity of such a

marriage. Its invalidity may be relied upon at any time and in any proceeding between the parties or others.

Although there may be no doubt in the minds of the parties, it is often desirable and sometimes of highest importance both to individuals and to the community, that there should be a judicial decision in reference to a void marriage, for then the status of the parties and their children is set at rest, and the parties are justified in the eyes of the public in entering into a second marriage.

Virginia Code, 1942 (Michie), sections 5100 and 5105, make provision for this situation. The fact that the marriage is void does not take away the power of the courts to declare it invalid.

Section 5100, defining and establishing the rights of the parties, reads as follows: "When a marriage is supposed to be void for any of the causes mentioned either in section 5087 * * * , either party may, * * * institute a suit for annulling same; and, upon due proof of the nullity of marriage it shall be decreed to be void by a decree of divorce and nullity."

By Code, section 5105, jurisdiction is conferred on "the circuit and corporation courts, on the chancery side thereof, and every court of this State exercising chancery jurisdiction for annulling or affirming marriages and for divorces."

In *Heflinger* v. *Heflinger*, 136 Va. 289, 118 S. E. 316, 32 A. L. R. 1088, and in *Pretlow* v. *Pretlow*, 177 Va. 524, 14 S. E. (2d) 381, we held that the remedy afforded by Code, section 5100, is, by reason of public interest, not confined to the causes therein specifically stated. In view of these decisions and the provisions of the statutes cited, the jurisdiction of the court over the causes of nullity of marriage, both as to the parties and subject matter, is too clear to be open for discussion.

It would seem that the holding of the learned chancellor that the trial court was without jurisdiction to award any support and maintenance money to the appellee for the benefit of the child was based upon the absence of the

word "nullity" after the word "dissolution" in the first sentence of Virginia Code, 1942 (Michie), section 5111.

The pertinent portion of that section reads as follows:

"Upon decreeing the dissolution of a marriage and also upon decreeing a divorce whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce, the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties or either of them, and the care, custody and maintenance of their minor children, and may determine with which of the parents the children or any of them shall remain; * * * ."

■ Code, section 5111, provides four situations in which the court may further decree concerning the estate and maintenance of the parties and the care, custody and maintenance of their minor children. These situations arise when there is (1) a decree dissolving the marriage; (2) a decree of divorce from the bond of matrimony; (3) a decree of divorce from bed and board; and (4) a decree that neither party is entitled to a divorce.

In Code, section 5100, it is provided that "upon due proof of the nullity of the marriage it shall be decreed to be void by a *decree of divorce* or *nullity*." (Italics supplied). Decree of divorce or decree of nullity is used in the alternative. The legislature made no distinction between the types of decrees.

Code, section 5107, provides that the court in which the suit is pending may make orders to compel the man "to provide for the custody and maintenance of the minor parties during the pendency of the suit, * * * ." No distinction is there made between suits to annul, dissolve, or affirm marriages.

■ As used in law, the meaning of the word "dissolve" is defined in Webster's New International Dictionary, (Second Edition) Unabridged, as, "to annul; rescind; discharge or release; as to *dissolve* an injunction."

■ Evidently the legislature in enacting section 5111 did not intend to make any distinction between decrees

for the dissolution of a marriage and decrees annulling a marriage. We do not think that the legislature intended to make ineligibility to marry the ground upon which the support of children of the marriage should be denied. The intent was to authorize a court to make such further decree as it might deem expedient in cases pending before it dealing with the severance of the relations of the parties incident to marriage.

Unless the words, "upon decreeing a dissolution of the marriage," in the opening clause of section 5111, refer to and mean decreeing the marriage to be void, they are wholly meaningless, since following them in the conjunctive are the words, "and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board."

When the foregoing Code sections are read and construed together, as they must be, our conclusion is that the trial court had full power to make such further decree as it deemed expedient concerning the care, custody, and maintenance of an infant child of the parties.

In this case, the parentage of the child is not in question. Both mother and father acknowledge him as their son, and both claim the right to his custody.

This brings us to a consideration of their duties and obligations to him, under and by virtue of Virginia Code, 1942 (Michie), section 5270, hereinbefore cited.

For a history of the origin and development of this statute, which became law in Virginia in 1785, as section 17 of the law of descents, see *Withrow* v. *Edwards*, 181 Va. 344, 25 S. E. (2d) 343. It is one of the first American statutes to lessen the harsh status of illegitimate children at common law, and has been adopted as of 1935, in twenty-three American jurisdictions. 1 Vernier American Family Laws, section 48.

This section has been before this court for consideration on a number of occasions. Heretofore, the question has largely been limited to the effect of legitimation of issue of a marriage null in law in respect to inheritance from the father. The first case was that of *Stones* v. *Keel-*

*ing* (1804), 5 Call (9 Va.) 143, where it was held that the issue of a bigamous marriage might inherit from the father. Judge Tucker therein said: "the law ought to receive the most liberal construction;" and that it was the sense of the legislature, "that the turpitude or guilt of the marriage shall not break upon the heads of their innocent offspring."

In *Goodman* v. *Goodman*, 150 Va. 42, 142 S. E. 412, we said:

"These statutes are remedial in their nature and should be liberally construed. When so construed it is apparent that the object and purpose of their enactment was to remove the stain and disabilities of bastardy from all 'innocent and unoffending' children who for any cause might be classed as illegitimate."

In *Fout* v. *Hanlin*, 113 W. Va. 752, 169 S. E. 743, in construing a statute the same as ours, this was said:

"The legitimating statute, founded in benevolence and charity, has for its design the protection of innocent off-spring. Humanitarian principles require that the statute be liberally construed to effectuate its benign purpose."

The language of our statute is clear, sweeping and direct. There are no words of limitation or qualification. The issue of marriages decreed null in law, without regard to the grounds of nullity, are legitimated. They are consequently endowed with all the rights of legitimate issue for all purposes and in their relation with other persons. They are put on a par with children born in lawful wedlock. They inherit their father's name, are his heirs apparent, and are entitled to look for and demand from him his care and protection. On the other hand, he has the right to their custody, control and maintenance to the same extent as if they were the issue of a valid marriage. The right of a father to have his marriage annulled permits him to be relieved of his obligation as a husband, but does not permit him to rid himself of his obligations as a father. Those obligations continue and can be enforced by appropriate court orders.

In 10 C. J. S., Bastards, section 18, page 87, it is said:

"In view of the rule that, in the absence of a statutory provision to the contrary, where legitimation takes place, all the reciprocal responsibilities and duties between a father and his legitimate child obtain between a father and his legitimated child, a father is under the duty to support or provide for his legitimated child."

See also, 7 Am. Jur., Bastards, section 59, page 667, and the following cases: *Bickford* v. *Bickford*, 74 N. H. 448, 69 A. 579; *Hartwell* v. *Jackson*, 7 Tex. 576; *Gordon* v. *Bennet*, 2 Cal. 503; *Adams* v. *Adams*, 36 Ga. 236; *Mund* v. *Rehaume*, 51 Colo. 129, 117 P. 159, Ann. Cas. 1913A, 1243, and *In re Smith's Estate*, 205 S. C. 457, 32 S. E. (2d) 375.

■ We have not construed section 5270 as solely a statute of inheritance. The precise question here raised has never before been presented to this court. It is true that section 5270 is found in the chapter of the Code, headed "Descents and Distributions." The section does relate to the right of inheritance; but that is only one of the rights it confers upon a legitimated child. It was not enacted for the purpose of relieving either parents of any legal or moral obligation to their child, but for the benefit of the child, and the child is entitled to all the benefits that flow therefrom. In two recent cases we have construed the statute as conferring specific rights upon the child. *McClaugherty* v. *McClaugherty*, 180 Va. 51, 21 S. E. (2d) 761; *Withrow* v. *Edwards, supra.*

In *McClaugherty* v. *McClaugherty, supra,* we considered the statute for determining whether or not the father owed a duty to support his child, and in *Withrow* v. *Edwards, supra,* whether or not the issue of a void marriage was a child of the father within the meaning of the death by wrongful act statute. In the first named case, we held that, in the absence of statute, it is the common law duty of the father to support his child, and that the duty was legal and not merely a moral obligation. And in the second case, the child was held entitled to the proceeds re-

covered on account of the death of her father by wrongful act.

In *McClaugherty* v. *McClaugherty*, *supra*, we quoted with approval the following statement from the opinion of the trial judge:

"Infants have ever been regarded as the wards of a court of equity and where the natural guardian of an infant is derelict in the performance of his legal and moral duty to support his infant child, then a court of equity will intervene in order that such relief may be afforded as the exigencies of the case demand."

It is a general rule of equitable jurisprudence that a court of equity having taken jurisdiction of a cause for any purpose, it will ordinarily retain it for all purposes connected with the principal controversy, or involved in the subject matter of the dispute, and award relief which accomplishes full justice and settles all matters in dispute between the litigants. *Dobie* v. *Sears, Roebuck & Co.*, 164 Va. 464, 465, 475, 180 S. E. 289, 107 A. L. R. 1026; 19 Am. Jur., Equity, section 127, *et seq.;* and 30 C. J. S., Equity, section 67, *et seq.*, and numerous cases cited.

The bill of the appellant was for the twofold purpose of securing a divorce and obtaining the custody of his infant son. His "special plea" prayed for an annulment of his marriage to the appellee, and asked that the court determine which of the parties should have the custody of their child. In an additional petition, he asked the court to award the custody of the child to him. In her answer, the appellee joined in the prayer of the appellant that her marriage to him be declared a nullity; denied the right of the appellant to the custody of their child; and asked the court to award the custody to her, and to require the father to make provision for his support and maintenance. The only contested issue was the custody, maintenance and support of the child. Clearly, the status of the legitimated child and the rights, duties and responsibilities of his parents were involved in the subject matter of the controversy between the parties.

For the reasons stated, we are of the opinion to reverse so much of the decree complained of as holds that the trial court was without jurisdiction to determine which of the parties should have the custody of their infant son, or to award support and maintenance for the benefit of the child. Accordingly, this cause is remanded, with direction that the trial court take such further proceedings, in conformity with this opinion, as may be necessary to determine the best interest and welfare of the said child in respect to his custody, support and maintenance.

*Reversed in part and remanded.*