MILTON *v.* ESCUE ET AL.

[No. 44, October Term, 1952.]

192

*Decided December 12, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*George L. Clarke* and *Everett L. Buckmaster,* with whom were *J. Lynn Lucas, Roland C. Ready,* and *Buckmaster, White, Mindel & Clarke,* on the brief, for the appellant.

*Francis H. Urner* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The appellant filed a petition or bill of complaint in the Circuit Court for Washington County, seeking a declaration that she is the legitimate daughter of John Franklin Coleman, deceased, and entitled to his estate to the exclusion of his brother and three sisters who would take otherwise. The chancellor sustained a demurrer to, and dismissed, the petition and petitioner appealed.

The petition makes these relevant allegations:

The appellant was born out of wedlock in 1922 in Shenandoah, Page County, Virginia; both her mother,

Annie Elizabeth Milton, and her father, John Franklin Coleman, were residents of that community. Sixteen years later, in the summer of 1938, John Franklin Coleman went to the home of the mother in Shenandoah and stated that he had wronged mother and daughter and would right the wrong, "meaning thereby that he would rectify the wrong done your Petitioner and her mother by permitting your Petitioner to be born out of wedlock". John Franklin Coleman desired to marry Annie Elizabeth Milton by a religious ceremony in accordance with the laws of the Commonwealth of Virginia but "was intimidated and prevented from so doing because of the hostility of his family to the proposed marriage". There follow the two paragraphs which are the heart of the appellant's case:

"7. That your Petitioner's said father and mother, shortly after the said visit of your Petitioner's father to her mother's home, during the summer of 1938, entered into a common law marriage which was kept secret because of the said hostility of the family of your Petitioner's father to the said marriage, but the said common law marriage between them, although kept secret for the reason aforesaid, was in fact consummated, and your Petitioner's said father and mother cohabitated for many years as husband and wife until shortly before his death on August 22, 1949, as aforesaid.

"8. That your Petitioner's father recognized your Petitioner to be, and treated her as his daughter from and after the time when he returned and acknowledged his wrong to your Petitioner and her said mother, as aforesaid, in the summer of 1938 until the time of his death."

It is alleged that the Petitioner is a resident of Shenandoah, Virginia, as was her father, John Franklin Coleman, at the time of his death there on August 22, 1949. He was survived by the Petitioner, his only child, and by three sisters, residents of Virginia and

a brother, a resident of the District of Columbia. Shortly after Mr. Coleman's death there was appointed a Virginia administrator of his estate. Because he owned in fee simple two lots of ground and improvements in Hagerstown—identified in the Petition—an Ancillary Administrator, was appointed by the Orphans' Court of Washington County. The Maryland Administrator and the sisters and brother of John Franklin Coleman are the parties defendant to the petition. The mother of the petitioner was not joined as a party.

Appellant contends that legitimacy is determined by the law of the domicile of father and child. She says the Virginia law is that if a man, having had a child by a woman, shall afterwards enter there into a secret common law marriage with the mother—although common law marriages are not valid in Virginia—and shall recognize the child as his own, thereby the child is made legitimate. She argues that Maryland should apply the usual rule and, giving recognition to that legitimate status, permit her to inherit Maryland real estate from her father.

The statute law of Virginia relied on by the appellant are Sections 5269 and 5270 of the 1919 Code, which appear as Sections 64-6 and 64-7, respectively, of the Code of 1950. They read:

Section 64-6:

*"When marriage legitimates children.*—If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, if recognized by him before or after marriage, shall be deemed legitimate (Code 1919, Sec. 5269)".

Section 64-7:

*"Issue legitimate though marriage null.*—The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate (Code 1919, Section 5270)".

It is said that they—or their predecessors—became part of the law of Virginia at the urging of Thomas

Jefferson who was repulsed by the harshness of the English rule that bastards could never be legitimated. In any event, from their effective date in 1785 they have been liberally construed by the Courts of Virginia to effectuate their remedial and beneficent purpose of removing the stigma of bastardy from innocent offspring of unmarried parents and to keep the sins of the father from being visited upon the child. Virginia construes the two sections together so that a child born of a couple before their marriage is made legitimate by their subsequent marriage even though the marriage turns out to be void. In *Goodman v. Goodman*, 150 Va. 42, 142 S. E. 412, a married woman left her husband, and some ten years later had a son by the man with whom she was living. When the boy was seven years old the mother and father had a ceremonial marriage, believing they had a right to do so. Actually the mother had never been divorced and her husband was living. The father died intestate and the Court, relying in part on *Hawbecker v. Hawbecker*, 43 Md. 516, held the statutes satisfied and the son to be legitimate and entitled to inherit. It said that Section 5269 (now 64-6) must be read in the light of Section 5270 (now 64-7) because:

"Section 5269 does not declare that the marriage between the man and the woman shall be a valid marriage in order to legitimate a child born before the marriage. Since Section 5270 legitimates children born after the celebration of a void marriage, it seems clear that the word 'intermarry' which appears in Section 5269, is used in its broadest sense and was intended to include every marriage, valid or void, entered into in accordance with the forms and ceremonies of the law * * *." [150 Va. 42, 142 S. E. 413]

The Court referred to the argument which had been made to it, based on New York and Massachusetts statutes and cases, that only a valid and legal marriage

can legitimate a child born before it occurs, and rejected it in these words:

"In so far as the New York and Massachusetts cases are in conflict with the conclusions we have reached in this case, we decline to follow them."

The *Goodman* case had been preceded by a number of others which show the lengths the Virginia courts go to apply the statute. In *Stones v. Keeling,* 9 Va. 143, the issue of a bigamous ceremonial marriage were held legitimate. So also were the issue of an incestuous union, *Heckert v. Hile,* 90 Va. 390, 18 S. E. 841, and of a marriage of an insane person incapable of the essential consent. *Cornwall v. Cornwall,* 160 Va. 183, 168 S. E. 439.

West Virginia, as part of its Virginia heritage, has statutes identical with Sections 64-6 and 64-7 of Virginia. In *Beverlin v. Beverlin,* 29 W. Va. 732, 3 S. E. 36, the Court held common law marriage invalid in that State (this is so also in Virginia—*Offield v. Davis,* 100 Va. 250, 40 S. E. 910) but Judge Snyder who wrote the opinion said he came to that conclusion with less regret because the statutes made the issue of such a marriage legitimate. In *Kester v. Kester,* 106 W. Va. 615, 146 S. E. 625, the testimony was that the couple had eloped and had gone through a wedding ceremony. The credibility of this testimony, and the validity of the wedding as a ceremonial marriage, were vigorously attacked. The children of the union were held legitimate on the theory that, in any event, they were the offspring of a relationship which would constitute and be recognized as a common law marriage in jurisdictions which permit such marriages, and which would be such in West Virginia save for its statutory requisite of a ceremonial marriage. *Fout v. Hanlin,* 113 W. Va. 752, 169 S. E. 743, *Luther v. Luther,* 119 W. Va. 619, 195 S. E. 594, and *Pickens v. O'Hara,* 120 W. Va. 751, 200 S. E. 746, all bow to the principle of *Kester v. Kester,* say that it must be adhered to as a correct pronouncement of

the law, and that a relationship proven to be one which would meet the test of a common law marriage, where they are recognized, is not in West Virginia "no marriage at all" but rather, in that State a marriage "deemed null at law" within the purview of the legitimatizing statute. In each of these cases, however, the alleged common law marriage was held not to meet the test of good faith, certainty and reputation sufficient to pass muster even by the liberal standard applied to legitimatize issue.

In *McClaugherty v. McClaugherty,* 180 Va. 51, 21 S. E. 2d 761, an infant daughter sued her father for maintenance and support which she claimed as his legitimate daughter. The father admitted the paternity but denied the legitimacy. Plaintiff's mother testified to a marriage ceremony. The license could not be found and her story was that they had buried it in the sand to keep the marriage secret. Nevertheless, when they returned to their home town, they lived together as husband and wife and were so known in the community for twenty years. A child was born sometime after their return home. The lower court rendered an opinion which the Court of Appeals of Virginia adopted as its own. In the opinion, the Court found that the evidence fully corroborated the testimony of the mother that she and the father were married and completely rebutted any inference in his testimony that their relationship was meretricious. Having so found a ceremonial marriage, proven by cohabitation in the community for many years and general reputation and holding out of marriage—the father was exempted during the First World War as a married man with a child—the court went on to review the West Virginia and Virginia cases on the subject of common law marriage, particularly the West Virginia cases of *Pickens v. O'Hara* and *Fout v. Hanlin,* both *supra,* and said:

> "These decisions of the Supreme Court of Appeals of West Virginia, and dicta of the distinguished judges of our own Supreme Court of

Appeals, concurred in by the entire court, are each entitled to much respect. They concur in construing section 5270 to legitimatize the issue of common law marriages. This construction is supported by sound reasoning from the Virginia decision. There is no Virginia authority to the contrary."

The *McClaugherty* case was cited with approval in *Henderson v. Henderson,* 187 Va. 121, 46 S. E. 2d 10. In this case, the Virginia Court of Appeals held Section 64-7 to confer upon one made legitimate under its terms all the rights of a child born in lawful wedlock. It said:

"The issue of marriages decreed null in law, without regard to the ground of nullity are legitimated. They are consequently endowed with all the rights of legitimate issue for all purposes and in their relation with other persons. They are put on a par with children born in lawful wedlock."

Below the chancellor said that the case should be decided by reference to Virginia law, but added that the question was largely moot because the legitimation laws of both Maryland and Virginia have the same characteristics and requirements. He then went on to hold that to rebut the presumption that the relationship which started as meretricious so continued, "a lawful subsequent marriage" must be shown. He said:

"It seems to me that the essentials which must be stated in order to state a good cause of action where the child is admittedly born out of wedlock, are the following (1) the subsequent intermarriage of the parents—intermarriage in a lawful manner (Dilworth v. Dilworth, 134 Md. 589), (2) the public acknowledgement of that marriage (Schilling v. Parsons (Ind.) 36 N. E. 2nd 958) and (3) the public acknowledgement by the father of the daughter."

In our view of the case, whether or not the appellant is the legitimate daughter of John Franklin Coleman

depends entirely upon the law of Virginia, the domicile of both father and child. Her status, as determined by Virginia law, will control and be applied in Maryland. We think the Virginia courts would not find "intermarriage in a lawful manner" an essential if, by that phrase, is meant that the marriage must be a marriage which is recognized by the law of Virginia as sufficient to make the couple who enter into it husband and wife— in other words, a ceremonial marriage. We think the law of Virginia to be that if there are alleged and proven facts and occurrences there which would constitute a valid common law marriage if those facts and occurrences had happened in a jurisdiction which recognizes such marriages, then that marriage, equally with a void ceremonial marriage, is one "deemed null in law" by the Virginia statute and its courts, and therefore one which makes the issue of the couple legitimate, whether *ante-nati* or *post-nati*. See also *Campbell v. Allen,* 208 Ga. 274, 66 S. E. 2d 226, and *Copenhaver v. Hemphill,* 314 Ky. 356, 235 S. W. 2d 778, in which the Georgia and Kentucky courts, in construing legitimation statutes similar to the Virginia statutes, found that common law marriages, equally with ceremonial marriages, were sufficient to satisfy the statutes. In each case, the court said, "We can see no distinction between a void ceremonial marriage and a void common law marriage."

This is not to say that the decree below was not correct in sustaining the demurrer. The basic allegations of the petition are insufficient, under the supporting circumstances it alleges, to state a cause of action. It sets forth no facts from which can be determined whether or not a secret common law marriage did occur. True, it is alleged in so many words that there was such a marriage. This amounts in the background of the case to a conclusion only.

The burden upon the appellant to prove the marriage is a heavy one. She is faced at the outset with two presumptions against her. The first is the presumption that alleged secret marriages, and particularly alleged

secret common law marriages, did not take place. Schouler, 6th Ed., Vol. 2, *Marriage, Divorce, Separation and Domestic Relations,* says in Section 1254, "Secret Marriages": "There is a presumption against the validity of secret marriages." Koegel, in his work on *Common Law Marriage,* refers to this section in Schouler, and, at page 112, says:

> "The case cited in support of the statement seems to bear out the text. It is the case of Sorenson v. Sorenson, decided by the Supreme Court of Nebraska in 1903 (68 Neb. 483)."

Koegel, at page 115, then mentions a dissenting opinion in the case of *Sharon v. Sharon,* 75 Cal. 1, 16 P. 345, 377, and adopts the following quotation therefrom as "entirely correct":

> "And it is rare, indeed, to find a case at common law where *any* respectable court has held a marriage entirely secret to be valid."

Koegel further emphasizes his belief in the correctness of the decision of Mr. Justice Field in *State of Maryland, Use of Markley v. Baldwin,* 112 U. S. 490, 5 S. Ct. 278, 28 L. Ed. 822, that some public recognition is essential to the validity of an informal marriage. The appellant argues, on the other hand, that an agreement to keep a marriage secret does not militate against its validity. In support of this, she cites *In Re Hulett's Estate,* 66 Minn. 327, 69 N. W. 31, 34, 34 L. R. A. 384, (also cited as *Hulett v. Carey),* where there was a written contract of marriage. Even in that circumstance, the court said: "An agreement to keep the marriage a secret does not invalidate it, although the fact of secrecy might be evidence that no marriage ever took place."

Appellant also cites in favor of the validity of secret marriages, *Whitehurst v. Whitehurst,* 156 Md. 610, 145 A. 204, where a valid common law marriage was found, although Mr. Whitehurst held himself out, and was regarded by his friends as, an unmarried man, and the lady was known by her maiden name, so registered at

hotels, and so kept her bank account. In the *Whitehurst* case, there was also writing in the prayer book at the place of the marriage ceremony by both parties, and the court said, at page 618 of 156 Md., at page 207 of 145 A.:

> "The marriage, however, was not kept entirely secret. We have spoken of the very full explanation made by both the plaintiff and Whitehurst to Mrs. Stevenson. He also introduced plaintiff to trades people, with whom she would come in contact, as Mrs. Whitehurst, notably to Mrs. Wells, to whom he said: 'She is no longer Miss Ulrich, but Mrs. Whitehurst.' The weight of the testimony, in our opinion, shows that she was known by the employees at the apartment as Mrs. Whitehurst * * *."

The second presumption which the appellant must overcome is that relied upon by the chancellor, namely, that where the relationship of the parties is admittedly meretricious in its inception, without claim of marriage or effort to marry, it is presumed to so continue. The rule is well stated in Schouler, in the work cited, at Section 1181, as follows:

> "A union once originating between man and woman, purely illicit in its character, and voluntarily so, there must appear some formal and explicit agreement between the parties thereto, or a marriage ceremony, or some open and visible change in their habits and relations, pointing to honest intentions, before their alliance can be regarded as converted into either a formal or an informal marriage, as although the relations between them were illicit in the beginning still a common-law marriage may later occur between them."

The author's conclusions are supported by the cases of *Hunt's Appeal, Jackson's Estate,* 86 Pa. St. 294; *Williams v. Williams,* 46 Wisc. 464, 1 N. W. 98,; *Floyd v. Calvert,* 53 Miss. 37, and see also annotation in L. R. A.,

1915 E, p. 77, notes 61 and 62; the following Maryland cases use the same tests: *Barnum v. Barnum,* 42 Md. 251; *Jones v. Jones,* 45 Md. 144; *O'Leary v. Lawrence,* 138 Md. 147, 113 A. 638.

Koegel in *Common Law Marriage,* which we have cited, discusses, at page 153, the general rule that in states which recognize common law marriages, continued cohabitation after removal of a legal impediment to marriage for a couple who were unable to marry before, constitutes a valid common law marriage. This is the Maryland rule of *Henderson v. Henderson,* 199 Md. 449, 87 A. 2d 403, wherein this court recognized the validity of a common law marriage in the District of Columbia under the circumstances mentioned. Koegel goes on to say that some courts hold that the mere continued cohabitation of the couple after the removal of the impediment does not constitute marriage where the cohabitation in its inception was meretricious. He continues:

"This is founded on the legal presumption that cohabitation originally illicit so continues until the contrary intent is shown. When the proof shows that the cohabitation was in its origin meretricious, that is, that the parties were consciously living in a state of fornication and without any pretense of marriage, the rule is given full effect, though there appears to be some difference of opinion as to the nature of the proof necessary to overthrow the presumption."

*Barnum v. Barnum, supra; Jones v. Jones, supra,* at pages 155 and 156 of 45 Md.; and *O'Leary v. Lawrence, supra,* at page 152 of 138 Md. 113 A. 638, are in accord

If the Virginia courts recognize common law marriages as constituting marriages "deemed null in law", as we assume they would do if the question were squarely presented—in *McClaugherty v. McClaugherty, supra,* [180 Va. 51, 21 S. E. 765] the holding on this point was either *dicta* or, at best, an additional ground—they would do so essentially on the strength of the West

Virginia cases. In *Fout v. Hamlin; Luther v. Luther;* and *Pickens v. O'Hara,* all of which have been discussed above, the West Virginia court found that a common law marriage results from a contract *per verba de praesenti* and operates from its date. Subsequent events and relationships are not part of the contract, but are simply evidence tending to support or override its existence. Nevertheless, such a marriage must have in it the belief in good faith of at least one of the parties that he or she was capable of, and was, entering into a valid marriage. In the West Virginia cases on which the Virginia court relied, the court found an absence of that good faith and, therefore, no legitimacy of the issue. Further, in those cases, the West Virginia courts stressed the "extraordinary and constant" use of the maiden name of the mother by her and the child, saying that this was not the accepted and usual conduct for a woman claiming to be married, stressed as well as the failure to live together in the community as man and wife.

We are inclined to the view that the Virginia court, in deciding whether a relationship, illicit in its origin, had become a common law marriage for the purpose of legitimating its issue, would require as strict a test as that demanded generally and by West Virginia. *Eldred v. Eldred,* 97 Va. 606, 34 S. E. 477. This is not to say that a secret common law marriage could not be proven if there were a formal or written contract of marriage shown to have been entered into in the good faith required in such circumstances. Likewise, other facts and circumstances might be sufficient, if from them there could be inferred that there had been a change in the relationship of the parties which constituted a valid common law marriage. We think, however, that the allegation of the bill of complaint that the parties entered into a "common law marriage which was kept secret" is not sufficient. There must be set forth the facts and circumstances, the occurrences and the events which constitute such a marriage. Likewise, the allega-

tion that John Franklin Coleman "recognized" the appellant as his daughter should be elaborated upon to show in what manner and to what extent. See *Hoover v. Hoover,* 131 Va. 522,; 105 S. E. 91, 109 S. E. 424. Compare the allegation of the bill of complaint in the instant case which, as we have said, amount to no more than conclusions of the pleader with those of the *Whitehurst case.* See *Taylor v. Whitehurst,* 151 Md. 621 at 628 and 629, 135 A. 428, 431, where the wedding was discussed by the Court:

"* * * The mode of its performance and celebration was the reading by Charles E. Whitehurst of the marriage service as contained in the Catholic Prayer Book, and as stated in the bill, 'when the clauses and paragraphs in said service were reached in which the parties are respectively asked whether he or she, as the case may be, accepts the other as his or her wedded spouse, each of said parties answered "Yes" * * * and that during the reading of said marriage service, as further evidence of their becoming husband and wife, 'the parties in the presence of each other and of said witness, wrote their respective Christian names 'Charles' and 'Claire' in two places; as shown by the photostat copy of the pages of the prayer book which are made part of the bill; * * *.'"

The Court went on to say that the bill further alleged that both the woman and the man fully intended that the ceremony and the making of marriage promises would constitute and make them husband and wife, and understood that it would have that legal effect, so that the marriage entered into by them was a complete, valid and lawful marriage. There is no such allegation here.

It may be that the appellant can make the amendments in the petition or bill of complaint necessary to have it meet the tests established by the law under the circumstances in which she finds herself. The court in

*Fout v. Hamlin, supra,* [113 W. Va. 752, 169 S. E. 746], spoke of the necessity of ample proof of common law marriage, and then said:

> "The pleadings presenting such claim must be closely examined and rigidly appraised. Mere generalities of averment will not suffice."

It follows that although the demurrer to the petition in its present form was properly sustained, the petition should not have been dismissed, but rather the appellant given an opportunity to allege facts as to the claimed common law marriage and recognition as a child, in the place of generalities. To this end, as permitted by Sec. 42 of Article 5 of the Code of 1951, the cause will be remanded without affirmance or reversal for further proceedings. *Goldsborough v. County Trust Co. of Maryland,* 180 Md. 59, 22 A. 2d 920.

If the bill is amended so that a secret common law marriage which will be recognized by Virginia as sufficient to legitimate the appellant can be alleged and proven, we are of the opinion that the status given the appellant by that marriage as legitimate, will be fully recognized and applied in Maryland. *Holloway v. Safe Deposit & Trust Co.,* 151 Md. 321, 134 A. 497. Although it is not entirely clear from the opinion in the *Holloway* case as to whether the court intended to recognize a status acquired in another State for the purpose of the inheritance of real estate in Maryland, it has been held by competent authority to have that effect. Beale, *Conflict of Laws,* Vol. 2, p. 712, Sec. 141.1 says:

> "Legitimacy once created by the proper law should everywhere be recognized, and the same effect given to it as is given to the same status created in the state of forum, or in the state where the effect is to be found. Thus, one legitimate by the proper law, though he would not be by the law of the situs of land, may inherit land."

The *Holloway* case is cited as authority for the last sentence. See also 25 Michigan Law Review 189, *Re-*

206

■■■■■■■■■■■■■■■■■■■■

*statement of the Conflict of Laws,* Secs. 139 and 141. The Maryland law now passes real estate in intestacy in the same proportion and to the same persons as take personal property. We think the rule stated by Beale and implicit in the *Holloway* case to be the rule which should prevail and so hold.

If the bill is amended, it will not be necessary to make the mother of the appellant a party since, under the Virginia law, the common law marriage she must prove to succeed in her right to inheritance, does not make the father and the mother husband and wife, but merely makes the child legitimate.

> *Case remanded without affirmance or reversal for further proceedings in conformity with this opinion, costs to be paid by appellant.*